[File No. 7239]

OLIVIA C. SKRAMSTAD, Respondent, v. CLARENCE
MILLER, Appellant.

(49 NW2d 652)

Opinion filed Sept. 29, 1951.   Rehearing denied Nov. 23, 1951

*McGee & McGee and Bosard & McCutcheon,* for appellant.

*Williams & Higgins,* for respondent.

SATHRE, J. This is an action brought by the plaintiff Olivia Skramstad, surviving widow of Alvin M. Skramstad, deceased, on behalf of herself and three minor children, against Clarence Miller for damages under the wrongful death statute. The complaint alleges that the deceased was killed in a collision between

a truck loaded with coal, driven by the deceased and a road scraper and caterpillar tractor negligently operated by the defendant's driver, Mason Teigen, and that the deceased was killed as a result of the negligence of said Mason Teigen.

The complaint alleges in substance that the plaintiff and her three minor children, a son 19 years of age, a son 14 years of age, and a daughter 11 years of age, were wholly dependent upon the deceased for their subsistence and support at the time of his death.

The complaint further alleges:

"That on November 30, 1948, Alvin M. Skramstad was driving his loaded Ford truck in a southerly direction on a county highway in Ward County, North Dakota, about six miles north of Benedict, North Dakota, when he was instantly killed by a collision between his truck and the rear end of a high rubber tired earth scraper pulled by a slow moving heavy caterpillar-type tractor, both of which machines were owned by the defendant, Clarence Miller, and were then and there driven and operated in the course of Defendant's business by his employee, Mason Teigen, in a southerly direction on the said highway.

"That said Mason Teigen negligently and wrongfully failed to drive the said tractor and scraper operated by him over to the side of the highway so as to permit the passage of the decedent's truck which he had a clear opportunity to do, after he saw the said truck approaching, and the said Teigen well knew that the decedent could not stop his truck on the down hill slope and could neither pass the defendant's vehicles as they were then being operated in the center of the road, nor could he safely drive his truck in either ditch from the high grade of the highway at the point of collision, and the said Mason Teigen negligently failed to relieve the said decedent from the position of deadly peril in which the said Teigen saw him to be immediately preceding the collision, although he then knew that his failure to clear the road would result in certain death for the decedent.

"That as a direct and proximate cause of the said wrongful negligent and illegal acts on the part of the said Mason Teigen, the said decedent was instantly killed in the collision aforesaid."

The answer denies any liability on the part of the defendant

and alleges that the collision was caused by the negligence and carelessness of the deceased, or that the contributory negligence of the deceased was the proximate cause of the collision and of the death of the deceased. A jury was impaneled and sworn to try the case.

At the close of the plaintiff's case the defendant made a motion for a directed verdict of dismissal upon the grounds that there was no testimony showing negligence on the part of the defendant, and that the evidence showed that the accident was caused by the contributory negligence of the deceased. This motion was renewed when both sides had rested. The trial court denied both motions and submitted to the jury the issues raised by the pleadings and the evidence taken as required by section 28–1509, 1949 Supp NDRC 1943.

The jury returned a verdict for the plaintiff in the sum of $15,000.00 and the defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court denied the motion and judgment was entered in accordance with the verdict.

The defendant appealed from the judgment and from the order denying the motion for a new trial.

There are numerous specifications of error but they may be considered under three heads:

I. The evidence is insufficient to establish negligence on the part of the defendant's driver, Mason Teigen, and that the evidence shows that the accident causing the death of the deceased was due to his own negligence or contributory negligence and that the court erred in denying defendant's motion for judgment notwithstanding the verdict.

II. The trial court erroneously instructed the jury on the last clear chance doctrine and that under the evidence in the case the last clear chance doctrine has no application.

III. The evidence of loss of earning power of decedent for measure of damages was wholly incompetent.

The facts are substantially as follows:

On November 30th, 1948, Alvin M. Skramstad was driving a Ford truck loaded with $5\frac{1}{2}$ tons of coal, in a southerly direction on a county highway in Ward County, about 6 miles north of the

town of Benedict. It was a clear day and the visibility was good.

On the same day and at some distance south of deceased, Mason Teigen was driving defendant's caterpillar tractor pulling an earth scraper in a southerly direction on the same highway. The tractor weighed about 17 tons and the scraper about 10 tons. The height of the scraper was 10 feet, and the width 11½ feet, and the combined length of the two machines was 50 feet.

At about 12:25 P.M. of said day Skramstad's truck overtook and crashed into the highway equipment driven by Mason Teigen and Skramstad was instantly killed.

The only eye witnesses to the accident were the deceased and Mason Teigen, driver of defendant's road equipment.

The accident occurred on a grade between 24 and 26 wide, with sharp ice covered ditches on each side 4 to 5 feet deep. About 475 feet north of the point of the accident is a small knoll. From this knoll is a short downward slope to the south which levels off and there is a gradual downward slope to the point of accident. There was packed snow or ice on this part of the highway, except for a spot of gravel or dirt about 10 feet square a short distance north of the point of accident.

It is the claim of the plaintiff that the defendant's driver Mason Teigen negligently drove the highway equipment in the center of the road, thus making it impossible for the deceased to pass, and that the negligence of defendant's driver was the cause of the accident that resulted in the death of plaintiff's husband. The substance of the testimony of the witnesses at the trial is as follows:

Mr. Lawrence Robinson, a witness for the plaintiff testified in substance as follows: He had known the deceased nine or ten years; he heard about the accident shortly after it happened and he and his neighbor, Ole Kinn went to the scene of the accident at 4:30 in the afternoon; the truck driven by the deceased had been pushed to the side of the road; they noticed tracks of the caterpillar tractor on the roadway and traced these tracks back approximately a quarter of a mile back from the place of the collision; the tracks were as near the center of the road as possible, one track of the tractor was on each side of the center

of the road. The hill to the north of the point of collision was thirty to forty feet higher than the point of the collision.

Joe Diede testifying for the plaintiff went to the scene of the accident, immediately after it happened, between 12 and 1:00 P.M. He testified that the tracks of the caterpillar were visible in the roadway, and were in the center of the road, and that just north of the point of the collision the tracks of the caterpillar were right in the center of the road. He had observed the tracks of the caterpillar for half a mile north of the accident. He traced the caterpillar tracks right up to where the truck of the deceased was standing and that they were in the center of the road at the point of the accident. In his opinion the tracks made by the wheels of the truck indicated that the brakes had been applied ·coming down toward the point of collision.

The tractor and carry-all had been moved away from the truck after the accident to the west side of the road as far as it could get. He estimated the traveled portion of the roadway was 24 feet wide.

Mr. Gullickson testified that he had owned the truck driven by the deceased and that it was 7½ feet wide, and he had sold it to the deceased in July the year of the accident. He arrived at the scene of the accident shortly after it occurred. There was snow or ice on the roadway between the places where the truck and the tractor and carry-all were standing. He had experience as a farmer and operator of tractors and could tell the difference between the type of track made by a caterpillar tractor and a wheel tractor. He observed the tracks of a caterpillar tractor on the roadway between the disabled truck and the point where the tractor was hitched to the carry-all. The tracks of the caterpillar tractor as shown in exhibit "A" were in the center of the road. The road was running north and south and the truck had been traveling south just before the collision. The width of the road between the caterpillar track and the edge of the road was about six feet, and there was not room for the truck to pass between the caterpillar track and the edge of the road.

Mason Teigen, the driver of the highway equipment, a witness for defendant, testified in substance as follows:

He was employed by the defendant Miller as operator of the

caterpillar tractor and scraper. On the 30th day of November 1948, the day of the accident, he was moving the caterpillar and scraper in a southerly direction toward the town of Benedict; that it was a clear day, and that there was some snow on the highway; that about five or six miles north of Benedict, Alvin Skramstad, driving a Ford 1½ ton truck loaded with coal in a southerly direction, crashed into the rear end of the scraper and that Skramstad was killed in the crash. He stated that he looked back and saw the truck coming over a knoll about 450 feet to his rear, and that he continued to drive as he always did, and did not look back again until after the crash, that during the time it took him to look back the truck probably moved forward about 20 feet. On cross examination he stated that after he saw the truck he began to pull to the right and that he had moved about 6 inches to the left when the truck crashed into his equipment.

That when he first saw the deceased coming his equipment was about 2 feet from the west side of the grade or highway where the accident occurred; that the deceased was coming at an "awful speed" and that it was only a matter of seconds from the time he saw the truck until the collision; that the grade where the collision occurred was between 24 and 26 feet wide. After the accident he threw out the clutches, jumped off and went back to the truck and found that the deceased was squeezed in so tight that he could not get him out; he moved the caterpillar forward two or three feet and went back to the truck again but could not get the deceased out, and then he ran for help. He stated that there was room on the east side of the scraper and caterpillar for the truck to pass, and that there was an open space about 9 to 10 feet wide, but that he did not measure it but made an estimate by the eye; that when the truck struck the scraper some of the coal was thrown into the scraper and some was thrown on the grade.

He further testified that he had passed a loaded Chevrolet truck about a quarter of a mile farther back on the same highway without any difficulty. After the accident he said he could still walk around the truck. The radiator of the truck collided with the left rear dual wheels of the scraper, and that as a result

the rear end of the truck was thrown to the east four or five feet. In order to extricate the body of the deceased from the truck a cable from the scraper was hooked to the door post and the frame of the truck pulled apart, and in this operation the truck was moved ahead about four feet from the position it was in after the crash, but that its position on the grade was not changed with reference to east and west. At the direction of the highway patrol he bladed the coal off the highway after the accident and that any tracks made immediately in front of the truck could have been made when he bladed off the coal.

He further testified that the grade at the point of collision was too steep to turn off with either tractor or truck; that the scraper was 11½ feet wide and that it was traveling two feet from the west edge of the grade and that there was sufficient room on the east side of the grade for the truck of the deceased to pass. He admitted that he could safely have driven the caterpillar into the ditch if he had the time. At the time of the collision he was traveling 5½ miles per hour.

On cross examination this witness testified as follows:

Q. "And from where you sat on the tractor could you without bending to one side or the other see the road behind you without any trouble?

A. "Yes.

Q. "And could you look back at any time to see whether traffic was coming?

A. "Yes.

Q. "And that is how it happened you saw Mr. Skramstad coming over the hill?

A. "Yes.

Q. "How far did the truck move while you were watching it, would you say?

A. "Well it didn't move very far.

Q. "Give us your best estimation of that distance, if you can.

A. "Maybe twenty feet.

Q. "Then you looked back to what your tractor was doing?

A. "Yes.

Q. "And didn't again look back until the impact occurred?

A. "No, sir."

August Tiedke a witness for the defendant testified that he was a highway patrolman and was called to investigate the accident. He took measurements of the scene, examined the tracks of the tractor and tire marks of the scraper made before the accident and traced them back up the hill 475 feet which was the point where the highway equipment could first be seen by the deceased, coming from the north. He measured the width of the grade at the point of collision and found it to be 26 feet; the track of the caterpillar he fixed at 2 feet from the west shoulder of the grade, where it was when he arrived. He noticed no skid marks from the truck of the deceased. He measured the distance from the right track of the caterpillar to the west shoulder of the highway—said it was two feet. He did not measure the distance from any of the dual wheels of the scraper to either shoulder of the roadway. He did not make any measurements from the rear dual mark or the mark left by the tractor at the point of accident, nor did he make an estimate of the distance of the tracks from the east shoulder of the road. He testified that in his opinion the truck of the deceased could have passed safely on the east side of the road equipment.

On cross examination this witness testified as follows, with reference to a conversation previously had with plaintiff's counsel:

Q. "Isn't it a fact that we discussed the collision at that time and that you expressed the opinion that Mr. Skramstad would have used better judgment if he had driven off the grade or over the edge of the grade at that point?

A. "It would have been better judgment to take the ditch than hit the mucher.

Q. "You told me that at that time?

A. "Yes.

Q. "Well he would have had to turn over in order to do that?

A. "Yes, he would have to turn over, but it still would have been a better bet than to hit the machine.

Q. "Do you think there was a chance that he could have passed that outfit without turning over in the slough?

A. "Yes, he could have and he could have not, it all depends on how he had taken it.

Q. "Your opinion was that he might have turned over, but it still would have been safer thing for him to do, isn't that correct?

A. "Yes.

Q. "And isn't it a fact that you told me in substance that he made a mistake in not taking to the ditch instead of hitting the machine, in your judgment?

A. "Yes, sure."

William Faul, a witness for the defendant testified in substance as follows: On the 30th day of November, 1948, he was driving his empty pickup Chevrolet truck on the highway north of Benedict, and that he came to the scene of the accident shortly after it happened, and saw the wreckage at a distance of 440 or 450 feet. There was driven hard snow on the road. He stopped at the second knoll and walked to the scene of the accident. He went back to his truck and placed it crosswise the road to warn and stop the traffic. He noticed the trail of the caterpillar ahead of him, and had noticed it for about two miles before he came upon the accident. Upon being asked where the tracks of the caterpillar were with reference to the road he said "it favored the right side of the road." At the point of the accident the truck, scraper and tractor blocked the roadway so traffic could not pass. That was before the cab had been pulled open by the cable.

Martin Hanson, a witness for the defendant, testified that he was the sheriff of Ward County; that between one and one-thirty he came to the scene of the accident in company with patrolman August Tiedke; that he stepped off the width of the roadway at the scene of the accident and estimated it to be between 24 and 26 feet; the right tread of the tractor was two to three feet from the west shoulder of the roadway; that he traced the road back 475 feet from the accident; that he observed no skid marks from the truck and that as he recalled it had come down the center of the road; that the radiator of the truck collided with

left rear duals of the scraper; it appeared that the force of the collision threw the truck three feet to the east; that there was packed snow on the road. The left hand track of the caterpillar as he remembered it "was around 12 feet from the west side of the road." He did not measure or estimate the distance of the tracks of the dual wheels of the scraper from the edge of the road.

Photographs of the scene of the accident taken by the defendant's witness highway patrolman August Tiedke, were introduced in evidence by stipulation of the parties. They were plaintiff's exhibits A. B. C. D. and E. and defendant's exhibits 1 to 9 inclusive. From these exhibits and especially plaintiff's exhibit "B" and defendant's exhibit "1" the wrecked truck appears to be considerably closer to the east edge of the traveled portion of the road than to the west edge, in fact, all of the exhibits indicate that the open space on the west side of the road at the point of collision is considerably wider than the space on the east side.

The trial court submitted the case to the jury as required by section 28–1509, 1949 Supp NDRC 1943, and after verdict for the plaintiff the defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial.

The defendant maintains that the evidence is insufficient to support the verdict, and that the deceased was guilty of contributory negligence as a matter of law, and that such contributory negligence was the proximate cause of his death.

The verdict of a jury on questions of the insufficiency of the evidence and negligence and contributory negligence will be set aside as a matter of law only if the evidence is such that but one inference or conclusion can be reasonably drawn therefrom in the minds of reasonable men. LaBree v. Dakota Tractor and Equipment Co., 69 ND 561, 288 NW 476; Schultz v. Winston Newell Co., 68 ND 674, 283 NW 69.

"On an appeal from a judgment on the ground that the court erred in failing to direct a verdict, the only question presented to this court for review is the sufficiency of the evidence to sustain the verdict, regardless of conflicting testimony. In determining this issue the court must adopt that view of the evidence

which is most favorable to the opposing party. 'Taylor v. Minneapolis, St. Paul and S. Ste. Marie Railway Co., 63 ND 332, 248 NW 268. Froemke v. Otter Tail Power Company, 68 ND 7, 276 NW 146.'

"Where the evidence is in conflict and reasonable men might draw different conclusions therefrom, this court on appeal will disturb neither the verdict of the jury based on such evidence nor the order of the trial court denying a motion for a new trial where the sole ground of attack is that the evidence is insufficient to sustain the verdict." Gunder v. Feeland, 51 ND 784, 200 NW 909, 910.

"The weight of the evidence was for the jury. Where there is a conflict in evidence, the judges may not substitute their judgment on the weight of evidence for that of the jury. Rott v. Provident Life Insurance Company, 70 ND 758, 298 NW 17, 19." Schnoor v. Meinecke, 77 ND 196, 40 NW2d 803.

"As to whether there is contributory negligence is ordinarily a matter of fact to be determined by the jury. It is only when the evidence is such that reasonable minds must conclude the plaintiff did not act with due care for his own safety that the question ceases to be one for the jury." Schnell v. Northern Pacific Ry. Co., 71 ND 369, 1 NW2d 56.

"On a review of an order denying a motion for judgment notwithstanding the verdict, this court is limited to a consideration of the evidence. If the record is such that there was some issue of fact to submit to the jury, and the jury rendered a verdict thereon, then it is clear the motion for judgment notwithstanding the verdict should be denied. It is not necessary to review the decisions of this court setting forth the principles involved. Such motion will not be granted where there is an issue for the jury to pass upon under the evidence, as it does not go to the weight of the evidence. In passing upon such matter, the evidence is considered in the light most favorable to the party against whom the motion is made." Nelson v. Scherling, 71 ND 337, 300 NW 803.

"Whether a new trial shall be granted on the ground of the insufficiency of the evidence to sustain the verdict lies in the sound judicial discretion of the trial court when there is a sub-

stantial conflict in the evidence. And unless there is an abuse in the exercise of such discretion this court will not interfere." Haslam v. Babcock, 71 ND 363, 1 NW2d 335; Haslam v. Babcock, 72 ND 581, 10 NW2d 239.

"The rule is well established in this court that the granting of a new trial on the ground of insufficiency of the evidence to sustain the verdict lies in the sound judicial discretion of the trial court when there is a substantial conflict in the evidence and in the absence of a showing of the abuse of such discretion the appellate court will not interfere." Kohler v. Stephens, 74 ND 655, 24 NW2d 64; Haslam v. Babcock, 72 ND 581, 10 NW2d 239; Haslam v. Babcock, 71 ND 363, 1 NW2d 335; Burdick v. Mann, 60 ND 710, 235 NW 340, 82 ALR 1443; Ross v. Robertson, 12 ND 27, 94 NW 765; Delaloye v. Kaisershot, 72 ND 637, 10 NW2d 593.

The testimony of the witnesses, the physical facts and the circumstances of the case presented controversial issues and questions of fact properly determinable by the jury, and the jury having rendered a verdict thereon for the plaintiff, the trial court properly denied the motion of the defendant for judgment notwithstanding the verdict, or in the alternative for a new trial.

The next proposition for consideration is whether the trial court erroneously instructed the jury on the last clear chance doctrine. The answer of the defendant alleges contributory negligence on the part of the deceased as the proximate cause of his death. The issue of contributory negligence is therefore raised by the pleadings, and the question presented is whether the last clear chance doctrine is applicable under the evidence. In the case of Ramage v. Trepanier, 69 ND 19, 283 NW 471, this court has stated the conditions under which this doctrine is applicable:

"The doctrine of last clear chance presupposes negligence on the part of the person injured or killed, or whose property is damaged, which apart from the doctrine itself, would constitute contributory negligence precluding recovery in spite of defendant's negligence." Note in 92 ALR pp 48, 55. To render the doctrine applicable, it is essential that the plaintiff be in a position of peril which he is then unable to avoid "by the exercise of reasonable vigilance and care;" that "The defendant knows of

the plaintiff's situation and realizes the helpless peril involved therein; or knows of the plaintiff's situation and has reason to realize the peril involved therein; or would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise;" and that the defendant "thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff." Am Law Inst Restatement, Torts, Vol 2, § 479, p 1253.

To render the defendant liable under the doctrine of last clear chance, "it is necessary that after he has discovered or should have discovered the plaintiff's peril he should have had the ability to avert the accident if he had used due care and competence in utilizing it. If the defendant, after discovering the plaintiff's peril, does all that can reasonably be expected of him, the fact that his efforts are defeated by antecedent lack of preparation or a previous course of negligent conduct is not sufficient to make him liable. All that is required of him is that he use carefully his then available ability." Am Law Inst Restatement, Torts, Vol 2, § 479, p 1256.

The trial court instructed the jury on the last clear chance doctrine as follows:

"There has grown up in our law a certain reasoning process that we sometimes call to our aid in analyzing the facts of an accident case, which is known as the doctrine of last clear chance. The plaintiff seeks to invoke this doctrine in her behalf in this case. It is permissible to use the doctrine only if you first find, and you may not use it unless and until you first find, that in the events leading up to the collision in question, both the plaintiff and the defendant were negligent.

"The doctrine of last clear chance may be invoked if, and only if, you find from the evidence that the following six facts exist;

"First: that deceased, by his own negligence, got himself into a position of danger.

"Second: that thereupon either it was physically impossible for him, through the exercise of ordinary care, to escape from the danger, or he was totally unaware of impending danger in his position.

"Third: that the defendant, that is, his employee, the operator of the tractor, had actual knowledge of the perilous situation of the deceased.

"Fourth: that it appeared to the defendant, or would have appeared to him in the exercise of ordinary care, that deceased was either unaware of the danger impending in the situation, or was unable to escape therefrom through the exercise of ordinary care.

"Fifth: that after the defendant acquired actual knowledge of the perilous situation of the deceased, he had a clear opportunity to avoid the accident and could have done so by exercising ordinary care.

"Sixth: that the defendant, that is, his employee, the operator of the tractor, did not avail himself of that opportunity, but by negligent conduct proximately caused the collision.

"If all the conditions just mentioned are found by you to have existed with respect to the collision in question, then you must find against the defense of contributory negligence, as urged by the defendant because under such conditions the law holds the defendant liable for any injury suffered by the decedent and proximately, resulting from the collision, despite the negligence of the decedent."

The instructions were clear and comprehensive and point out the facts and conditions which the jury must find before the doctrine can be applicable.

It is established by the evidence that the collision occurred on a grade 24 to 26 feet wide, with sharp ice covered ditches on each side 4 to 5 feet deep. It was covered with packed snow or ice, except for a spot some ten feet square immediately north of the accident.

Certainly this condition of the road was observable by the defendant's driver of the highway equipment as well as by the deceased, driver of the truck. If the jury believed, as they could believe from the evidence, that the highway equipment was in the center of the road they could also conclude that the driver thereof was negligent. When the deceased came over the first knoll and saw the highway equipment in the center of the road he had a right to anticipate that the operator would pull over to the

right side of the road and leave the left half open for the truck to pass in safety.

All of the witnesses for the plaintiff testified that the tracks of the caterpillar were in the center of the road at the point of collision. Gullickson testified that the open space to the left of the caterpillar tracks was six feet wide and that the truck of the deceased which was $7\frac{1}{2}$ feet wide could not pass between the caterpillar tracks and the east edge of the road.

Mason Tiegen, driver of defendant's highway equipment testified that he was traveling at a speed of $5\frac{1}{2}$ miles per hour when he saw the approaching truck some four hundred fifty feet to his rear. He was operating his machine in the fifth gear, and that its speed in sixth gear was $8\frac{1}{2}$ to 9 miles per hour. The jury could find that when he saw the deceased coming down hill on the snow or ice covered road he could have or should have, realized the perilous situation of the deceased, and that instead of "driving as he always did" he could have increased the speed of his equipment to the $8\frac{1}{2}$ to 9 miles per hour of which it was capable of traveling so as to enable him to move his equipment to the right side of the road in time to make room for the truck to pass. And if he was in the center of the road, as plaintiff's witnesses testified, there was sufficient room to permit him without difficulty to move his equipment to the right side of the traveled portion of the road.

As we have pointed out elsewhere in this opinion, the photographs taken at the scene of the accident indicate that there was considerably more room on the west or right side of the wrecked truck at the point of the collision than on the left or east side. The highway patrolman, testifying for the defendant admitted on cross examination that the deceased might have turned over had he taken to the ditch "but it still would have been a safer thing for him to do." It was this witness who took the photographs of the scene of the accident that were introduced in evidence and who assisted in taking the measurements of the width of the grade and the distance of the caterpillar tracks from the edge of the grade at the point of collision.

There is therefore a sharp conflict in the evidence as to wheth-

er the defendant's operator drove his equipment in the center of the road at the point of collision. The evidence also raises the question of whether there was contributory negligence on the part of the deceased. According to the evidence the deceased first saw the highway equipment at a distance of 475 feet. At some point during the time he traveled that distance he must have realized he was in a position of peril which he was then unable to avoid by due exercise of vigilance and caution. The defendant's driver had seen the deceased approaching, and if his equipment was in the center of the road, it was his duty to exercise due and ordinary care to avoid a collision.

Under the evidence the jury could find that the deceased was guilty of contributory negligence in placing himself in a perilous situation from which he could not then escape, but the jury could also find that the defendant's driver by exercising ordinary care had time and opportunity to pull over to the right side of the road so as to permit the deceased to pass in safety, and that his failure to do so was the proximate cause of the collision.

These were all questions of fact arising from the evidence and circumstances of the case and were properly submitted to the jury. We hold therefore that the trial court did not err in instructing the jury on the doctrine of "last clear chance."

Appellant assigned as error the refusal of the trial court to given certain requested instructions to the jury, one of which was as follows: "that the plaintiff's decedent was guilty of contributory negligence as a matter of law in crashing into the rear of a vehicle he was overtaking having a clear, unobstructed view of said object ahead of him 475 feet, on a clear day at the hour of noon."

The effect of such instruction would be to direct the jury to find a verdict for the defendant, and under the evidence it was properly denied.

However, the trial court instructed the jury as follows with reference to the question of whether the deceased was negligent in the operation of his truck:

"If you find from all the evidence that if the plaintiff's husband had been driving at a reasonable rate of speed, and had kept a vigilant lookout ahead of him down the highway, traveling

in the same direction that he was, and would have had time and opportunity, by having his car under proper control, to have avoided the accident, then the deceased contributed to the accident; or if you find that he was the sole cause of it, then your verdict must be for the defendant.

"You are instructed that if one fails to see what one should have seen by the exercise of ordinary care, the conclusion of negligence is warranted."

In any event whether there was contributory negligence on the part of the deceased, or negligence on the part of the defendant's operator of the highway equipment, were questions of fact properly submitted to the jury.

The existence of negligence whether contributory or primary is a "question of fact", never a "question of law", unless the established or conceded facts from which the inference must be drawn admit of but one conclusion by reasonable men. Armstrong v. McDonald, 72 ND 28, 4 NW2d 191.

Questions of negligence, contributory negligence and proximate cause are "questions of fact" for jury in a personal injury action, unless evidence is such that reasonable minds can draw but one conclusion therefrom, Leonard v. North Dakota Co-Operative Wool Marketing Ass'n, 72 ND 310, 6 NW2d 576. Wilson v. Oscar H. Kjorlie Co., 73 ND 134, 12 NW2d 526. Fagerlund v. Jensen, 74 ND 766, 24 NW2d 816.

We have carefully read the instructions, and we are satisfied that on the whole they were fair and comprehensive and fully covered the issues of law and fact raised by the evidence and circumstances of the case.

Finally the defendant contends that the evidence as to loss of earning power of the decedent for measure of damages was wholly incompetent. Under this specification the defendant contends that the plaintiff did not submit competent evidence to show what the loss of earning power or remuneration was by reason of the death of the decedent, and that there was a complete failure to separate capital assets from his earnings. Plaintiff introduced in evidence exhibits "H", "I", "J", and "K" over defendant's objection. These exhibits are sheets of paper prepared by the decedent and his wife, showing the income and

expenditures of their farming operations for the years 1945, 1946, 1947 and 1948, and were used in preparing their federal income tax returns for those years. They are fairly intelligible and show the sources of all gross income, such as grain, livestock, poultry and dairy products, the expenses in connection therewith, and the net income for the respective years for which they were prepared.

This action was brought under Chapter 32–21 NDRC, 1943, known as the wrongful death statute. Section 32–2102 defines the measure of recovery as follows: "In an action brought under the provisions of this chapter, the jury shall give such damages as it finds proportionate to the injury resulting from the death of the person entitled to recovery."

This statute was under consideration by this court in the case of Stejskal v. Darrow, 55 ND 606, 215 NW 83.

On the question of measure of damages the court said: "It is impossible in such cases to ascertain with mathematical exactness the value of such services as may be considered by the jury. The best that can be done is to make an approximation thereof. The jury have the right to take into consideration all of the circumstances."

The deceased operated a farm of his own of four hundred and eighty acres and in addition rented another three quarter sections. From the evidence it appears that he was a good farmer, industrious, thrifty and in good health and that he provided ample support for his family. The exhibits in question were competent evidence of the value of the pecuniary support he furnished to his family and could properly be considered by the jury together with other evidence in determining his earning capacity and the loss sustained by his dependents as a result of his death.

Finding no reversible error in the record the judgment of the district court is affirmed with costs to the plaintiff.

MORRIS, C. J., and GRIMSON and CHRISTIANSON, JJ., concur.

BURKE, J. (Dissenting) I cannot agree that the evidence in this case was sufficient to warrant the submission of the ques-

tion of last clear chance to the jury. I think it is clear that a plaintiff who seeks the benefit of the last clear chance or humanitarian doctrine has the burden of proving the facts which make the doctrine applicable. 61 CJS (Motor Vehicles) 237. Plaintiff's proof must be such that a jury could reasonably infer that defendant knew or should have known that plaintiff was in a position of peril before the accident (61 CJS 127) and that thereafter defendant had had an opportunity to avoid the accident with safety to himself and others. 61 CJS 129. I am satisfied that plaintiff's evidence is insufficient upon each of these essentials.

At approximately noon upon a clear day, plaintiff's decedent in a ton and a half Ford truck loaded with five and a half tons of coal was proceeding south upon a north and south highway. The highway had a graveled surface which for the most part was covered with packed snow. As he topped a rise which the highway traversed, he saw or should have seen defendant's equipment moving along the highway in the same direction and approximately four hundred fifty feet ahead of him. Defendant's equipment consisted of a caterpillar tractor which weighed seventeen tons and a grader or earth mover which had a capacity of fifteen cubic yards, was eleven and a half feet wide and weighed ten tons. The tractor was towing the grader at a speed of five and a half miles per hour, and the distance from the front of the tractor to the rear of the grader was fifty feet. Defendant's driver testified that in checking the road behind him he turned and saw an approaching truck about four hundred fifty feet behind him, that at the time he was on the right hand side of the highway, that he immediately turned his attention to his driving and started to move still farther to the right, that he had moved over about six inches when the truck struck the rear of the grader. The testimony of plaintiff's witnesses is to the effect that at the point where the truck struck the back of the grader the tracks left by the tractor were evenly astride the center of the highway. At the time of the collision however, the front end of the tractor was approximately fifty feet ahead of the point of contact. There is no evidence to show the position of the tracks of the tractor at that time although it was stated

that one hundred feet beyond the point of contact they were clear over on the right hand side of the road.

Plaintiff contends that defendant's driver when he turned around and saw the truck approaching from a distance of four hundred fifty feet away, should have realized that, due to the condition of the road, the truck could not stop before it reached him and was therefore in a position of peril. I see no basis for such a conclusion particularly in view of the undisputed testimony of the witness Faul who stated that he. drove a pickup truck over the top of the same hill, within an hour after the collision, at thirty-five miles per hour, saw the accident ahead of him and had no difficulty in stopping at a point about half way between the top of the hill and the scene of the accident. It is true that Faul's truck was unloaded but we cannot charge defendant's driver with knowledge that plaintiff's decedent was carrying five and a half tons of coal in a ton and a half truck. Furthermore, Mr. Faul parked his truck across the road at the point where he stopped, in order to make a road block. He lived in the vicinity of this highway, knew it was used for hauling coal and the fact that he parked his truck at the place and in the manner he did indicates that his judgment, based on his own experience in using the highway, was that trucks proceeding southward over the top of the hill could stop in approximately half the distance between the crest of the hill and the point of the collision. I therefore see no reasonable basis for a conclusion that defendant's driver should have realized that the truck driven by plaintiff's decedent was in a position of peril from which it could not be extricated, or that ·plaintiff's decedent would not slow down sufficiently to give him time to move his equipment to the right hand side of the road by ordinary driving procedure.

I am also satisfied that there is no evidence which will justify a conclusion that defendant's driver had the last clear chance of avoiding the collision. "A mere showing that there was a possibility that defendant could have avoided the injury is insufficient." 61 CJS 129. As was said in Everest v. Riecken, 193 P2d 353, 356, 30 Wash2d 683, "We are concerned not with a last possible chance but with a last clear. chance; and a clear chance

to avoid a collision involves the element of sufficient time to appreciate the peril of the party unable to extricate himself and to take the necessary steps to avoid injuring him." "We are not to tear down the facts of a case and rebuild the same so that, by a trimming-down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely, last *clear* chance, not possible chance." Bagwill v. Pacific Electric Ry. Co., 90 Cal App 114, 265 P 517, 519.

Defendant's equipment weighed twenty-seven tons. It was fifty feet in length. The grader had two axles. From the front axle there projected a tongue or hitch which was hooked onto a swivel on the tractor. It is clear that the front wheels of the grader would not turn to the right immediately and to the same extent as the tractor turned to the right but would turn gradually as the rear end of the tractor moved to the right. There would be another substantial lag in movement between the front and rear wheels of the grader. The tractor was fifteen feet long. It could turn only by slowing down the movement of one of the caterpillar tracks. It is apparent that defendant's equipment because of its length, weight, slow speed and the nature of its locomotion was relatively unmaneuverable. There is no evidence in the record whatever as to the distance forward this equipment would have to travel in order to clear the road for plaintiff's decedent.

There is also no evidence as to the speed at which plaintiff's decedent was traveling except the inferences which may be drawn from the demolition of his truck and the distances to which the coal he was carrying was catapulted. The extreme damage to plaintiff's decedent's truck may be accounted for by a combination of speed and the weight of the colliding vehicles. However, the distance to which the loose coal was thrown was dependent almost entirely upon speed at the time of collision. Some of the coal was thrown over the top of the truck cab and over the scraper a distance of about fifty feet. The conclusion is unavoidable that the truck was being driven rapidly, but whether its speed was thirty, thirty-five or fifty miles an hour rests entirely in the field of speculation.

There is thus no reasonable basis upon which the jury could have computed the time within which defendant's driver could have acted even if he had been obliged to conclude that plaintiff's decedent was in a position of peril from which he could not extricate himself at the time he first saw him four hundred-fifty feet away. If plaintiff's decedent was driving fifty miles an hour, which is entirely possible, defendant's equipment would only have had time to travel forward a distance equal to its own length, between the time its driver saw the approaching truck and the collision. The time interval would have been less than seven seconds.

I am satisfied therefore that plaintiff has not sustained the burden of proving facts from which the jury could reasonably reach the conclusion that defendant's driver had the last clear chance to avoid a collision.

The judgment should be reversed and a new trial granted.