Alice EMERY, Individually, and as Trustee for the North Dakota Workmen's Compensation Bureau, Appellant,

v.

The NORTHERN PACIFIC RAILROAD COMPANY, a Corporation; William Norman and Thomas McMahon, Appellees.

No. 19275.

United States Court of Appeals Eighth Circuit.

Feb. 17, 1969.

Rehearing Denied March 27, 1969.

Carlton J. Hunke, Fargo, N. D., for appellant; Mart R. Vogel, of Wattam, Vogel, Vogel, Bright & Peterson, and Thomas A. Davies, of Soule & Davies, Fargo, N. D., with him on the briefs.

E. T. Conmy, of Conmy, Conmy & Feste, Fargo, N. D., and Edward M. Glennon, Minneapolis, Minn., for appellees.

Before MATTHES, GIBSON and LAY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

This is the second appeal by plaintiff Alice Emery from a final judgment dismissing her complaint against the defendants, The Northern Pacific Railroad Company, and William Norman and Thomas McMahon, the engineer and fireman of a Northern Pacific passenger train involved in a railroad crossing accident, on February 23, 1964 in Grand Forks, North Dakota. The train collided with a Volkswagen bus resulting in five fatalities, including that of Bishop Richard H. Emery, the plaintiff's decedent. The bus was owned and operated by Reverend Edwin L. Bigelow.[1] Jurisdiction is based on diversity of citizenship and a claim in a requisite amount. The substantive law of North Dakota applies.

Judgment for defendants was entered based upon a jury verdict in their favor. The facts are set out in the first appeal, Emery v. Northern Pacific Railroad Company, 370 F.2d 1009 (8 Cir. 1967), and will not be repeated here except where necessary to discuss the issues of this appeal. The first appeal resulted in a remand because of an erroneous instruction, submitting the issue of joint enterprise and imputed negligence to the jury, this Court holding that there was no substantial evidence to support the joint enterprise issue and that no basis existed for the submission of the imputed negligence issue to the jury.

The plaintiff on this appeal charges the District Court with error: (1) in refusing to give a requested instruction that Bigelow's negligence was not to be imputed to Emery, (2) in instructing the jury on contributory negligence, and (3) in refusing to instruct the jury on the last clear chance doctrine.

Plaintiff's requested instruction No. 3 on nonimputation of negligence reads:

"You are reminded of the fact that the vehicle in which the deceased Richard H. Emery was riding at the time of the accident in question was then being operated by Edwin L. Bigelow. You are instructed that the negligence of Edwin L. Bigelow, if any, may not be imputed to the decedent, Richard H. Emery, and therefore, you shall find that he the said Richard H. Emery was not guilty of contributory negligence in any degree proximately contributing to causing the accident." (Adapted from Cal.Jury Instructions, No. 210C.)

"Ordinarily, negligence on the part of the driver of a vehicle cannot be imputed to a passenger riding with him." Kelmis v. Cardinal Petroleum Company, 156 N.W.2d 710, 715 (N.D.1968); see also, Anderson v. Stokkeland, 125 N.W.2d 665, 667 (N.D.1964); Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526 (N.D.1944). Absent joint enterprise, that principle was recognized by us in the first appeal in this case.[2] Although defendants again argue that Bishop Emery was not a guest and that Bigelow and Emery could have been on a joint mission for their church, that issue has been settled in the first appeal; and the evidence on the retrial being substantially the same on this point, the law of this

---

1. In addition to the driver Bigelow and passenger Emery, the Volkswagen carried Mrs. Bigelow, Pamela and Chris Bigelow, Sherell Simons, Kimberly Schick and Bethany Schick. The only survivors were 5-year old Chris Bigelow, 6-year old Bethany Schick and 8-year old Kimberly Schick.

2. We did not undertake to determine the present status of the North Dakota law on imputed negligence in a joint enterprise situation in the first appeal, since we had held there was not sufficient evidence to support the submission of the joint enterprise issue. See pp. 1013 and 1014 of 370 F.2d.

case is that the driver's negligence cannot be imputed to Bishop Emery and no basis exists for the submission of the imputed negligence issue. As stated in American Surety Company of New York v. Bankers Savings and Loan Association, 67 F.2d 803, 805 (8 Cir. 1933):

> "Stated generally, the rule is that, 'where evidence is substantially the same on both trials, questions of law determined on writ of error or appeal are "law of the case," * * *, on second writ of error or appeal.'"

This reasoning was also followed in Metzger v. Hossack, 165 F.2d 1 (8 Cir. 1948) and in Kempe v. United States, 160 F.2d 406 (8 Cir. 1947), subject to the exception expressed in both of those cases that the law of the case need not be followed if the original holding was "completely erroneous". See 1B Moore, Federal Practice § 0.404[1] (2d ed. Supp. 1965). We feel that our previous analysis of this point was correct.

■ The plaintiff was clearly entitled to an instruction that the driver Bigelow's negligence was not to be imputed to Bishop Emery. While there does not appear to be any North Dakota decision on this precise point, other jurisdictions have held that where the issue of contributory negligence is submitted it is prejudicial error to fail to inform the jury that the driver's negligence is not imputed to the passenger. Bishop v.

Plumb, 363 Mich. 87, 108 N.W.2d 813 (1961) held at 815:

> "Once the court submitted the question of * * * contributory negligence to the jury, it was an essential requirement of fair and full instruction on the law applicable to [the plaintiff's] case that he also instruct the jury that [driver's] contributory negligence, if any, should not be imputed to * * * a guest passenger, and he did so. Had he failed to so instruct on such an important element of the law applicable to the facts in this particular case, he would have committed reversible error even though no request were made to so charge."

Tomson v. Kischassey, 144 Cal.App.2d 363, 301 P.2d 55 (1956) held it to be reversible error not to give an adequate instruction that the contributory negligence of the driver of a bicycle was not to be imputed to the passenger, unless the jury found a joint enterprise. To the same effect is Van Noy v. Frank, 10 Cal.App.2d 423, 51 P.2d 1166 (1935). Accord, Gellerson v. Rasins, 248 Md. 75 234 A.2d 758 (1967); Cobb v. Chubeck, 399 Pa. 201, 160 A.2d 207 (Pa.1960).

■ The question arises of: (1) whether a proper request for such an instruction was made, and (2) whether the court in effect covered this issue in its charge.[3] The District Court refused to give the requested instruction No. 3 because of the last clause thereof read-

---

3. Refusal to give an instruction is not improper if the charge properly and fully states the law applicable to the issues. 2B Barron & Holtzoff, Federal Practice and Procedure § 1102, pp. 447-48 (1961). In discussing Federal Rule 51, Fed.R.Civ.P., the Eighth Circuit case of Baltimore and O. R. Co. v. Felgenhauer, 168 F.2d 12 (8 Cir. 1948) states at 18: "And it has always been the rule in the federal courts that 'Unless a request for instructions is entirely correct, and may properly be given without qualification or liability to be misunderstood, there is no error in refusing it.'" (Citations omitted), but the requested instruction in that case was held not to be definitely applicable to the issue; and as pointed out in 2B Barron & Holtzoff, Federal Practice and Procedure § 1102, p. 448 (1961), "This however is not the invariable rule. If the request directs the court's attention to a point upon which the jury has not been charged but upon which an instruction would be helpful, the court's error in failing to charge may not be excused by technical defects in a request to charge." Citing Southern Railway Company v. Elliott, 250 F.2d 740 (6 Cir. 1958); Messer v. L. B. Foster Co., 254 F.2d 412 (5 Cir. 1958); Williams v. Powers, 135 F.2d 153 (6 Cir. 1943).

ing: "[T]herefore, you shall find that he the said Richard H. Emery was not guilty of contributory negligence in any degree proximately contributing to causing the accident." We think the instruction as requested was too broad and the District Court was correct in refusing it as requested in that it directed the jury to conclude that Emery could not be found contributorily negligent since Bigelow's negligence could not be imputed. Emery's contributory negligence, if any, was still a submissible issue as decided on the first appeal, thus making the last clause of the instruction incorrect and misleading.

 The plaintiff orally requested a correct instruction solely related to the point that the driver's negligence could not be imputed to Emery, but defendants argue that this request was not made in accordance with Rule 51, Fed.R. Civ.P., requiring written requests for instructions. While we think the defendants are technically correct on the procedure to be followed in requesting instructions, we do think that basically the plaintiff was entitled not only to an instruction on her theory of the case but to a clear and unequivocal instruction that driver Bigelow's negligence (which appears to be obvious) should not be imputed to Bishop Emery. We canvass the charge then to ascertain, as contended by the defendants, that such instruction was in effect given. For as noted in Cohen v. Evening Star Newspaper Co., 72 U.S.App.D.C. 258, 113 F.2d 523, 524 (1940):

> "A party has no vested interest in any particular form of instruction. This is true, even though the proffered prayer may be unobjectionable in itself, standing alone, as a statement of law. What the language of the instructions shall be is for the trial judge to determine. If, on examination of the entire charge, it appears that the jury has been fairly and adequately instructed, the requirements of the law are satisfied."

See also, LaBarge Water Well Supply Co. v. United States, 325 F.2d 798 (8

Cir. 1963); McDonnell v. Timmerman 269 F.2d 54, 62 (8 Cir. 1959); Mounds Park Hospital v. Von Eye, 245 F.2d 756, 764, 70 A.L.R.2d 335 (8 Cir. 1957). The Court in its charge did say that if the defendants were found to be negligent, the jury must inquire whether,

> " * * * [T]he defendants have proven by a fair preponderance of the evidence that Richard Emery *himself* was guilty of contributory negligence as defined in these instructions. [and] If you find by a fair preponderance of the evidence that Richard Emery *himself* was guilty of negligence * * such contributory negligence would bar any recovery by the Plaintiff * * * regardless of any negligence on the part of the Defendants, * * *.
>
> \* \* \* \* \* \*
>
> "[And] With regard to the Defendant's claim that the Plaintiff's decedent, Richard Emery, was *himself* guilty of contributory negligence, you are instructed that the law presumes that said Richard Emery, in his conduct at the time of and immediately preceding the accident, was exercising ordinary care." (Emphasis supplied.)

The use of the pronoun "himself" did serve to direct the jury's attention to the fact that it was the negligence of the decedent Emery that would defeat plaintiff's recovery in the event the defendants were found negligent. But the obvious negligence of driver Bigelow dominates this factual consideration, and we think the plaintiff was entitled to a clear and unequivocal statement that the driver's negligence was not to be imputed to Bishop Emery. Failure to do so deprived plaintiff of a fair submission of her case.

 Plaintiff maintains the District Court erred in instructing the jury on the issue of contributory negligence and cites two North Dakota cases in support of her contention, Chambers v. Minneapolis S. P. and S. S. M. Ry. Co., 163 N.W. 824, 827, 37 N.D. 377 (1917), and Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526, 528 (1944). These

cases indicate that under North Dakota law there is only narrow latitude for finding a passenger in a car to be contributorily negligent. The instances in which contributory negligence by a passenger is possible are limited to remaining in an automobile "with a knowledge of dangers incident to its operation under the circumstances", *Chambers* at 827, and being "aware of obvious danger in time to warn the driver and [failing] to do so." *Wilson* at page 528.

In spite of the narrowness of these criteria, this Court found in the previous appeal on this case that sufficient evidence of contributory negligence existed for a submission to the jury of that issue. We said at 1012 of 370 F.2d:

"While under North Dakota law a passenger is not charged with the same duty to keep a look out as is the driver, the passenger may be guilty of contributory negligence if he fails to warn the driver of an obvious danger, contributes to the accident, or acts in disregard of his safety." (Citations omitted.)

and held that while Bishop Emery was not guilty of contributory negligence as a matter of law there was evidentiary support for a finding that Bishop Emery was contributorily negligent (at 1013).[4]

The plaintiff's last specification of error is the failure of the District Court to instruct on the doctrine of last clear chance as requested by the plaintiff. Plaintiff's instruction No. 16 on last clear chance reads:

"In the event the Court does instruct on contributory negligence, then we request the following instruction:

'Even though you should find that the decedent, Richard H. Emery,

was negligent in any particular, if you further find that by reason of such negligence, if any, he was placed in a position of peril and that the engineer and fireman, or either of them, saw the vehicle in which the decedent, Richard H. Emery was riding and knew and appreciated the peril, and if you further find that such operators of the train, or either of them, with such knowledge, could in the exercise of ordinary care have avoided striking the vehicle in which the decedent Richard H. Emery was riding, and did not do so, and if you further find that the said operators of the train, or either of them, by reason thereof were negligent, and that such operators' negligence was a proximate cause of the collision, then I instruct you that the plaintiff is not barred from a recovery by reason of the contributory negligence of the decedent, Richard H. Emery, if any.' "

Neither this instruction nor any other instruction on last clear chance was given. In plaintiff's first appeal this Court recognized that the plaintiff in her complaint had pleaded last clear chance and on appeal she asserted the trial court erred in failing to instruct on last clear chance; but in view of the remand on the imputed negligence issue we said, "[W]e deem it unnecessary to consider the remaining errors urged by the plaintiff." (1014 of 370 F.2d.) We also recognized in the first appeal that the evidence of negligence against the defendants was not strong. *Id.* 1011. We did not feel justified however upon the record of the first appeal to say that the defendants

---

4. Even if this were the first appeal we feel it would be clear that under the cases cited by plaintiff, (and incidentally, specifically cited by the Court in the original appeal on this case) sufficient evidence was presented to justify a submission to the jury on the issue of contributory negligence. Bishop Emery had crossed this point at least once previously. It was broad daylight and several

road signs, including a "Stop Ahead" sign, were present. The car was traveling at a rate of 45 miles per hour and the side windows were badly frosted. Even under the cases cited by plaintiff these facts were sufficient for a submission to the jury on contributory negligence. The court did not err in submitting the issue of decedent's possible contributory negligence to the jury.

were entitled to a directed verdict upon the issue of defendants' negligence.

A brief review of the evidence pertaining to the last clear chance issue is necessary for a proper consideration of the plaintiff's contention that it was error to refuse to submit that issue to the jury. Defendant McMahon, as fireman was riding on the left side of the locomotive from which point he first sighted the Bigelow vehicle coming from the north at a point approximately 1700 to 2000 feet from the crossing, which was approximately the same distance the train was from the crossing. Both the vehicle and the train were traveling at approximately the same speed, 45 miles per hour. The Bigelow car was the only vehicle in view. After losing sight of the vehicle at two different intervals because of intervening obstructions, McMahon at one time testified he again saw the vehicle when 500 to 600 feet from the crossing, and testified at another time he again saw the vehicle at 700 to 800 feet from the crossing, when he concluded that the vehicle was not going to stop and an emergency existed. He subsequently changed his testimony, fixing the distance at 250 feet when he concluded an emergency existed. Five or ten seconds after first sighting the vehicle, he told the engineer to sound the whistle loud and clear, which was done, and asked the engineer to put on the emergency brakes when about 500 to 600 feet, or 700 to 800 feet, from the crossing. The engineer did not hear him because of the train whistle and possibly other train noise.

McMahon then moved from his seated position on the left and proceeded four or five feet to the engineer's brake pedestal and applied the emergency brakes. The brakes require a four-second buildup time to take effect and according to McMahon the brakes proceeded to take effect at about 200 feet from the crossing. (Obviously if this testimony is correct, McMahon's change in testimony fixing 250 feet as the point of his awareness of an emergency, is in error—as the buildup time of four seconds would put the train at approximately the crossing before the brakes would take effect. At 45 miles per hour the train would travel 264 feet in four seconds.)

The defendant railroad in interrogatories estimated the stopping distance of the train under circumstances then existing was approximately 800 feet, and the speed of the train could have been reduced to 15 miles per hour in about 770 feet. The defendants' expert on braking distances testified:

"A. After the brakes became effective, I would say that it would take— well, let me go back over this again. From the time that the brakes were put in emergency, from the time the application was initiated, I would say that it would take slightly more than 800 feet. It would be between a thousand and eleven hundred feet in my judgment.

"Q. A thousand and eleven hundred feet. Would that include the brake cylinder air pressure buildup? A. Yes.

"Q. That's the four-second lag? A. Yes.

"Q. Would it also include the—of course the actual retardation time to stop the train? A. Yes.

"Q. What about the engineer's reaction time? A. It wouldn't include that. (Tr. 1093, 1094)."

The locomotive traveled either 755 feet (interrogatories) or 800 to 900 feet (testimony) east of the crossing before stopping.

While McMahon's testimony is neither too clear nor unequivocal, as is not uncommon in relating distances in emergency situations, we think the evidence warrants the submission of the issue of last clear chance under North Dakota law. In Jasper v. Freitag, 145 N.W.2d 879, 882 (1966) the North Dakota Supreme Court held:

"This court repeatedly and consistently has held that questions of negligence, contributory negligence, and proximate cause of an injury are questions of fact for the determination of the jury, and that unless the evidence

is such that only one conclusion can reasonably be deduced therefrom, such determination by the jury is final and binding on this court. It is only when the facts and circumstances are such that reasonable men can draw but one conclusion therefrom that the question of negligence and contributory negligence becomes a question of law for the court."

North Dakota has long recognized the doctrine of the last clear chance in railroad crossing accidents and held in Acton v. Fargo and Moorehead St. Ry. Co., 20 N.D. 434, 129 N.W. 225 (1910) that contributory negligence would not bar plaintiff's recovery where the trainmen could have avoided the collision, stating at 228 and 231:

> "If the motorman, after seeing respondent, had any reasonable ground to apprehend, that he was not aware of the approaching train, and was unconscious of the danger that was imminent, a recovery is justified notwithstanding plaintiff's prior negligence [Citing cases]. The ground upon which a plaintiff may recover, notwithstanding his own negligence, is that the defendant, after becoming aware of the danger to which the plaintiff was exposed, failed to use a proper degree of care to avoid injuring him.
>
> \* \* \* \* \* \*
>
> "Both parties being negligent, the true rule is held to be that the party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it. It is well settled that a plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's omission (after becoming aware of the plaintiff's danger), to use ordinary care for the purpose of avoiding the injury to him."

The rule is stated in 44 Am.Jur., Railroads § 539, p. 788 (1942) as:

> "The general rule is that the contributory negligence of a person who was struck by a train at a crossing does not bar a recovery against the railroad company for the death or injury thus sustained, if the employees of the railroad company in control of the train, having discovered him in a position of obvious peril in time to have prevented the accident by the exercise of reasonable care, failed to exercise such care to avoid injury to him."

1. Blashfield, Automobile Law and Practice § 65.33, p. 586 (3d ed. 1965) phrases the general principle thusly—while an automobile approaching a railroad crossing at a safe distance at the usual speed does not suggest peril, if it continues to approach without slowing up, or the driver is seen to be inattentive, the trainmen then have a duty to take steps to avoid a collision, and at § 65.32, p. 584, the fact the trainmen may not have had time to stop the train does not preclude the operation of the last clear chance doctrine, where it appears that if they had checked the speed of the train a collision would have been avoided. The North Dakota Supreme Court in State ex rel. North Dakota Workmen's Compensation Board, etc. v. Great Northern Ry. Co., 54 N.D. 400, 209 N.W. 853 (1926) did restrict the last clear chance doctrine by holding at 859: " \* \* \* that one is not in a position of peril, within the last clear chance doctrine, when he occupies a place where, by the exercise of reasonable care for his own safety, all danger may be avoided," and apparently refused to apply the last clear chance concept by holding that where the negligence of the railroad had ceased, the truck driver's negligence was an intervening and proximate cause of the injury. Later, the North Dakota Supreme Court in Stelter v. Northern Pacific Railway Company, 71 N.D. 214, 299 N.W. 310, 313 (1941) discussed the doctrine of last clear chance and expressly approved the language and holdings in *Acton, supra,* but held under the factual situation there presented (the plaintiff did not show that the train could have been brought to a

stop in less than 300 feet after the collision) that the plaintiff's contributory negligence barred recovery as, "Neither the doctrine of last clear chance nor any recognized extension or refinement thereof is sufficient to relieve the plaintiff of the legal consequence of her contributory negligence." at 314.

A majority of jurisdictions follow the rule that if defendant realizes that plaintiff, though not yet in a position of irredeemable peril, is inattentive and therefore unlikely to discover his peril in time to avoid the harm, then the doctrine of last clear chance is likewise applicable and defendant will be held responsible for the accident in spite of plaintiff's negligence. Restatement (Second), Torts § 480, p. 535 (1965); Prosser, Torts § 65, page 441 (3rd ed. 1964). The most recent case to deal with this phase of the last clear chance concept in North Dakota is Skramstad v. Miller, 78 N.D. 450, 49 N.W.2d 652, 660 (1951). There the Court accepted an instruction by the trial court which in part said: "The doctrine of last clear chance may be invoked if, * * * Second: that thereupon either it was physically impossible for him, [Plaintiff] through the exercise of ordinary care, to escape from the danger, or he was totally unaware of impending danger in his position.", and listed as other conditions that defendant knew of or "it appeared to the defendant, or would have appeared to him in the exercise of ordinary care, that deceased was either unaware of the danger impending in the situation, or was unable to escape therefrom through the exercise of ordinary care."

The latest pronouncement of the North Dakota Supreme Court on a factual situation dealing with the doctrine of last clear chance is found in Kelmis v. Cardinal Petroleum Company, 156 N.W. 2d 710 (N.D.1968) where the court views the issue as one of proximate cause and held the fact of the driver's negligence would not bar the plaintiff's recovery for the death of her husband, a passenger in the car, if the defendant were also negligent and if such negligence proximately contributed to the happening of the collision. It thus appears that North Dakota, particularly as to a passenger, would allow recovery either if the passenger were not negligent and the defendant was at least guilty of concurring negligence with the driver of the vehicle in which the passenger was riding, (the driver's negligence is not imputed to the passenger) or even if the passenger were guilty of contributory negligence within the narrower concept of a passenger's ability and obligation to warn of approaching dangers, if the defendant in the exercise of ordinary care saw that the passenger was in a position of peril from which he was unable to extricate himself or to which he was oblivious, and the defendant had the last clear chance to avoid the collision.

The defendants question the correctness of the proffered instruction on last clear chance and contend it does not comply with N.D.J.I. No. 703, which is set forth in the margin.[5] Defendants maintain plaintiff's requested instruction No. 16 leaves out the vital elements (1) that the decedent was "in a position of actual danger from which he was unable

---

5. N.D.J.I. suggested instruction No. 703 reads as follows:
"If,
"(1) The (Plaintiff) (Decedent), by reason of his own negligence, was in a position of actual danger from which he was unable to escape by using ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; and
"(2) The Defendant knew that the (Plaintiff) (Decedent) was in a helpless position of peril, or in the exercise of ordinary care should have known, that the (Plaintiff) (Decedent) was unable to escape; and
"(3) Thereafter the Defendant, by using ordinary care, had the last clear chance to avoid the mishap but failed to exercise such care, proximately causing the mishap. * * * the defense of contributory negligence fails and the Defendant would be liable for the damages suffered by (Plaintiff) (Decedent) and proximately resulting from the mishap, despite the negligence of the (Plaintiff) (Decedent)."

to escape by using ordinary care", (2) that the plaintiff's decedent was unable to escape and (3) that the instruction did not use the words "last clear chance." Mathes & Devitt's Federal Jury Practice and Instructions (1965) suggested instruction 73.25 on last clear chance contains the same elements noted in the North Dakota instruction. We think plaintiff's instruction No. 16 should be tailored to incorporate the elements set forth in the suggested North Dakota Jury Instruction and the federal instruction as set forth in Mathes & Devitt.

 We do not feel that cases should turn on a matter of semantics and are loathe to reverse for variance in instructions unless it is clearly shown prejudicial error was committed. However, since no instruction was given at all on last clear chance and a request was made therefor, the trial court should have entertained suggestions for and have submitted a last clear chance instruction in conformity with the North Dakota law. As reasoned in Southern Railway Company v. Elliott, 250 F.2d 740, 743 (6 Cir. 1958), even though a party's requested instruction may not have expressed the correct rule, the request was sufficient to require the District Judge to charge upon the question, if the evidence was sufficient to take the case to the jury on that issue; and a party is entitled to have his "theory of the case including the question of proximate and remote causation, submitted to the jury."

For the above reasons the judgment is reversed and the case remanded for proceedings consistent with this opinion.

Reversed and remanded.

LAY, Circuit Judge (concurring in part and dissenting in part).

I concur in the majority opinion that the plaintiff is entitled to have her theories of the case submitted to the jury. This includes (1) that negligence of the driver is not imputed to the plaintiff's decedent, riding as a passenger in the car, and (2) that in an action *involving a passenger,* under the facts in this case, plaintiff was entitled under North Dakota law to have the jury consider whether in fact the railroad had the last clear chance to avoid the accident.

I respectfully dissent, however, in the majority's determination that under the present record the evidence justifies submission of the issue of contributory negligence of the decedent passenger to the jury. I cannot agree that a submissible issue of contributory negligence is the law of this case. It would be unrealistic to say that this court should compare word for word the record in this case with the prior record to determine whether they are the same. If the law be so stereotyped, then we should retry the case solely on the original transcript and language of the first trial. The doctrine of the "law of the case" more pragmatically can relate to the relationship of the parties, such as the doctrine of imputed negligence between a driver and passenger, or some other substantive issue of law, rather than sufficiency of evidence relating to factual issues. Nor am I challenging the prior decision of another panel of this court in finding sufficient facts justifying the submission of contributory negligence on another record. I am only concerned with the facts here.

There is no case under North Dakota law, or any other law of which I am aware, that authorizes the submission of contributory negligence of a passenger to a jury under the meager facts proven here. The facts relating to Bishop Emery's conduct offered in the majority opinion are summarized in footnote 4. None of these facts existing alone or in totality relate to legal conduct unbecoming a reasonably prudent man.

First, it is said that Bishop Emery had crossed this point once previously. Surely mere familiarity with a highway crossing does not spell out a legal duty. Second, "it was broad daylight and several road signs, including a 'stop ahead' sign were present." However, unless there is evidence that the Bishop knew that the driver was not going to stop, these physi-

cal facts do not relate a legal duty to act. It is elementary law that a passenger is under no duty, absent apparent recklessness of a driver, to be attentive to the dangers of the road. The third fact related is that the car was traveling at 45 miles per hour and the side windows were badly frosted. However, none of these facts provide a duty for a passenger to warn his driver unless and until he becomes aware of a danger. There is no evidence that the Bishop saw this train in time to warn the driver. In fact, the evidence is to the contrary. Eight year old Kimberly Schick, another passenger, testified that he said nothing about the train before the collision. This would lead one reasonably to believe he was totally unaware of the approaching train. Again, it is elementary that Bishop Emery had no legal duty to maintain a lookout as he approached the railroad crossing. And surely, riding in a vehicle which has frosted side windows does not make a passenger contributorily negligent.

A guest passenger ordinarily has not the duty to warn of a danger until (1) he becomes aware of the danger itself, (2) he is aware that the driver is oblivious to it, and (3) that a protest or warning might avert the accident. Cf. Rutz v. Iacono, 229 Minn. 591, 40 N.W.2d 892 (1950). In many cases the duty of the guest passenger under realistic standards of care and safety is to do nothing and remain silent. Cf. Yarabek v. Brown, 357 Mich. 120, 97 N.W.2d 797 (1959). Only in extreme situations,

where the evidence is far more compelling than here, could a passenger's action be sufficiently controlling to avoid the accident. For the most part an instruction on contributory negligence of a guest passenger in an automobile case is fictionalized "gobbledygook." It is "full of sound and fury, signifying nothing." It serves only to confuse juries and augment findings of error in appellate courts. The instant case is typical.

Without awareness of the train's approach it is difficult for me to perceive what duty Bishop Emery was to perform.[1] The only inference one can make from the totality of circumstances here is that Bishop Emery should have maintained a better lookout in order to have seen the train in order to have issued some kind of warning to the driver in order to avert an accident. The only trouble with this inductive imperspicuity is that the law of North Dakota does not provide the basic premise of original duty. In fact the North Dakota law is just the contrary:

"She [plaintiff] was not charged with the duty of keeping a lookout. Simmons v. Leighton, 60 S.D. 524, 244 N. W. 883. Her duty was to inform the driver of any peril of which she was aware. Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526. It was therefore error to submit the question of contributory negligence to the jury. This error was prejudicial and the order denying a new trial must therefore be reversed." Satterland v. Fieber, 91 N.W.2d 623 (N.D.1958).

---

I. Justice Cardozo's famous phraseology is apropos:
"The friend whom I invite to ride with me in my car, and who occupies the rear seat beside me, while the car is in the care of my chauffeur, is charged with active vigilance to watch for tracks and trains, and is without a remedy

if in the exuberance of jest or anecdote or in reminiscence, he relies upon the vigilance of the driver to carry him in safety. I find it hard to imagine a rule more completely unrelated to the realities of life." 35 Harv.L.Rev. 113 at 121.