**McBRIDE et ux. v. PALUXY ASPHALT CO. et al.**

**No. 5934.**

Court of Civil Appeals of Texas.
Texarkana.

July 10, 1942.

Rehearing Denied July 30, 1942.

Pollard, Lawrence & Reeves and Geo. P. Blackburn, all of Tyler, and R. T. Bailey, of Dallas, for appellants.

Martin, Moore & Brewster, of Fort Worth, and Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, for appellees.

WILLIAMS, Justice.

J. W. McBride and wife filed this suit against Paluxy Asphalt Company and Southern Asphalt & Petroleum Company, defendants below, to recover damages for the death of Aaron McBride, their son, which resulted from burns received in an explosion on the premises of defendant Paluxy Asphalt Company at Talco, Texas. American Indemnity Company intervened, adopted a portion of plaintiffs' pleadings, and sought recovery to the extent of its payments theretofore made to plaintiffs under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq.

For the purpose of loading out asphalt into oil trucks, the Paluxy Asphalt Company maintained on its premises a loading rack. About 15 feet from the rack it maintained a pump operated by steam. The steam to operate the pump came through pipe from the boilers of the refinery, some distance away. The Paluxy Asphalt Company had a pipe connected up that ran from the pump to a railroad tank car containing asphalt. The pump was used on the day of the explosion and prior thereto to draw or pull the asphalt out from the bottom of the railroad tank car through a three-inch pipe up through a riser and down through a metal spout into the manhole on top of the oil truck. The down-spout, equipped with a weight, worked on an elbow which allowed it to be swung over and down into the manhole of an oil truck. A turn of a valve on the pump permitted the entry of steam and started its operation, and a turn of a valve on the riser allowed the asphalt thus pumped up to empty out into an oil truck. In loading, these valves were turned on or off and the down-spout moved into position by an attendant of the Paluxy Asphalt Company or by the operator of an oil truck loading out. Deceased and his two companions on the date of the explosion were each familiar with the operation and purpose of these valves and down-spout, and had theretofore turned them off and on. It is without dispute in the evidence that the Paluxy Asphalt Company owned, installed and maintained above-detailed equipment with all connections on its premises, and had so maintained same for some time to enable asphalt to be loaded into oil trucks. It is further without controversy that Southern Asphalt & Petroleum Company's only connection with above facts appears to be that of a broker in the sale of asphalt to the Land Construction Company, the former owning no interest in or exercising any control or supervision over above properties of the Paluxy Asphalt Company.

Plaintiffs pleaded a cause of general negligence under the "res ipsa loquitur doctrine, alleging, in substance, that the asphalt in storage, tank car, loading rack, connections and all mechanical equipment used "to transfer the asphalt from the storage tank to the truck of the Land Construction Company" were on the premises of and owned by the defendants, or one of them, and were under the exclusive control and management of one, the other, or both of the defendants; that the act or acts necessary to put into operation the mechanical equipment used to transfer the asphalt from said tank to said truck were under

**34**

control of one, the other, or both of defendants, and was actually put into operation by an employee of defendants; that "while said asphalt was being loaded into said tank under the direction, control and supervision of the defendants, or one of them, for some reason unknown to plaintiffs such asphalt exploded * * * that the explosion was caused solely and only by and resulted from some act or omission, amounting to a want of ordinary care by defendants, and who, without justification, caused and permitted such explosion to occur; and that they do not know and therefore cannot allege the specific act or acts of negligence."

At the conclusion of plaintiffs' evidence in chief, the trial court concluded that the testimony introduced failed to raise the issue of defendants' negligence under the "res ipsa loquitur" doctrine, granted defendants' motion, and instructed a verdict for defendants.

Deceased, F. L. and Arvil Bankston, employees of Land Construction Company, each operated an oil truck furnished by the latter and made two round trips each 24 hours in transportation of asphalt from Talco to Arp, Texas. The truck being operated by deceased had mounted on it a steel tank of a 1000-gallon capacity. An opening or manhole on its top and near the rear permitted the flow of fluid into the tank. A small platform on the truck was at the rear of the tank.

The testimony of F. L. and Arvil Bankston, the only witnesses who testified concerning the accident itself, are in accord. No evidence refutes that given by them. On arrival of the three on the morning of May 18th, deceased, who was in the lead, proceeded to the loading rack, the other two driving their trucks to a gasoline pump 150 to 175 feet distant from the loading rack. Shortly after their arrival, after asphalt had flowed into deceased's tank for "ten minutes, five or ten minutes" and when "just about half loaded," according to F. L. Bankston's estimate, and about 4 A. M., an explosion occurred in deceased's oil tank. The explosion blew out the rear end of deceased's tank, carrying him, covered with flames, 10 or 15 feet to the rear of the truck.

Blackie, an employee of Paluxy Asphalt Company, its only attendant on the premises, was either on or at the loading rack when deceased drove up. The evidence does not disclose any act on his part with respect to aid or instructions to deceased in loading the latter's tank. As the Bankstons proceeded to the gasoline tank they observed deceased's truck sitting under the down-spigot, saw deceased "standing on the back of his truck with his hand on that valve up there," "the valve on the down-spigot; the pump was running."

Blackie came up to the gasoline pump shortly after the Bankstons' arrival, unlocked the gasoline pump, and had serviced F. L. Bankston's tank with gasoline and was making out a ticket when the explosion occurred. When the witnesses last observed deceased, which was just before the explosion, he was standing on the platform of his truck, and "the only man within 170 feet of Aaron's truck during that time was Aaron, as far as I know." "Q. Nobody during that period of time you were loading your gas, nobody was on the truck having anything to do with the loading the asphalt, nobody was on the truck or about, except Aaron? A. No, sir; that is all I saw."

■ It is apparent from the foregoing details that the cause of this explosion or the particular thing that caused it is unexplained and a matter of conjecture. The fact of the explosion here might suggest negligence on the part of some one. If everything that could be reasonably assigned as the cause of the explosion had been wholly under the control of defendant, it might be inferred that the cause, whatever it was, consisted in some negligent act or omission of defendant. Defendant installed and maintained the equipment with its connections and steam to be used in the loading out of asphalt. Defects in this machinery or its connections or in the operation of the pump may have been the thing that caused the explosion. At the same time, it is apparent that the deceased had a hand in loading out the asphalt on the occasion in question. He was attending the loading of his tank. It appears that he alone was operating the valve on the down-spout. He alone was in control of his tank. The explosion occurred inside his tank. No employee of defendant was within 150 feet of this tank at the time. As stated in Texas & P. Coal Co. v. Kowsikowsiki, 103 Tex. 175, 125 S.W. 3, 4, applicable to this record, "a state of facts in which the cause of the accident cannot be found does not warrant a conclusion that one, rather than the other, produced it. We cannot presume in favor of one and against the other. Evidence must be brought by a plaintiff,

having the burden of proof, sufficient to justify an inference of negligence on the part of the defendant, and none such can be drawn from an occurrence which, while indicating negligence somewhere, is as consistent with the hypothesis that it was his own, or that of one in whose right he sues, as that it was that of the other party." Courtney v. New York, & N. H. Ry. Co., D.C., 213 F. 388; 25 C.J. p. 204, Sec. 38; 28 C.J. p. 600, Sec. 70. This reasoning gives rise to the rule restated in Davis v. Castile, Tex.Com.App., 257 S.W. 870, applicable here, that the doctrine of res ipsa loquitur has no application where the thing causing the accident was not under the exclusive management of the defendant, but was partially under that of the injured party. See also 45 C.J. p. 1214, Sec. 781. The holding in Tyreco Ref. Co. v. Cook, Tex. Civ.App., 110 S.W.2d 219, is not contrary to the rule of evidence above stated. Benkendorfer v. Garrett, Tex.Civ.App., 143 S. W.2d 1020, is not applicable under plaintiffs' pleadings, and for the further reason that the instrumentality or thing which caused the explosion is a matter of conjecture.

For the reasons above indicated, the judgment of the trial court is affirmed.