CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a Corporation, Plaintiff and Respondent,

v.

JOHNSTON'S FUEL LINERS, INC., a Corporation, Defendant and Third-Party Plaintiff and Appellant,

v.

Leonard PRINCE, an Individual Doing Business Under the Trade Name of Regent Oil Company, Third-Party Defendant and Respondent.

No. 8059.

Supreme Court of North Dakota.

May 29, 1963.

Rehearing Denied June 14, 1963.

Donald R. Crabtree, Ellendale, and Dwight Campbell and Stanley R. Voas, Aberdeen, S. D., for plaintiff and respondent.

Conmy & Conmy, Bismarck, for defendant and third-party plaintiff and appellant.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, and Rausch & Chapman, Bismarck, for third-party defendant and respondent.

ERICKSTAD, Judge.

This is an action on the part of the plaintiff, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, to recover damages from the defendant, Johnston's Fuel Liners, Inc., for losses incurred by the plaintiff arising out of a petroleum fire allegedly caused by the defendant.

The aforesaid defendant answered the plaintiff, denying liability, and, as a third-party plaintiff seeking to recover damages suffered by the said defendant in the fire, brought Leonard Prince, an individual doing business under the trade name of Regent Oil Company, into the suit as a third-party defendant.

Leonard Prince answered, denying liability, and counterclaimed, asking to recover damages for his losses arising out of the same fire.

This case was consolidated for trial with the case of Regent Cooperative Equity Exchange, plaintiff and respondent, versus Johnston's Fuel Liners, Inc., defendant and appellant, and Leonard Prince, an individual doing business under the trade name of Regent Oil Company, defendant and respondent; and the case of C. W. Newby, doing business as Regent Lumber Company, plaintiff and respondent, versus Johnston's Fuel Liners, Inc., defendant and third-party plaintiff and appellant, versus Leonard Prince, an individual doing business under the trade name of Regent Oil Company, third-party defendant and respondent; and was tried before a jury in Hettinger County.

The jury, on October 24, 1961, returned a verdict in favor of the plaintiff, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, in the sum of $3,024.34.

The jury also found the defendant, Johnston's Fuel Liners, Inc., and the third-party defendant, Leonard Prince, to be joint tortfeasors, and thus, in effect, held against the two of them jointly in the sum of $3,024.34.

The jury dismissed the claim of Johnston's Fuel Liners, Inc., against Leonard Prince, and the claim of Leonard Prince against Johnston's Fuel Liners, Inc.

The third-party defendant, Leonard Prince, moved for judgment notwithstanding the verdict or, in the alternative, for an order granting a new trial. The proper motions for a directed verdict had been made.

District Judge Harvey J. Miller granted the motion of the third-party defendant and vacated the verdict as it applied to the said third-party defendant, and, further, assessed damages against the defendant, Johnston's Fuel Liners, Inc., in the amount of $17,710, in favor of the third-party defendant. He did not pass on the motion for new trial.

The defendant, Johnston's Fuel Liners, Inc., moved for judgment notwithstanding the verdict against said defendant, but did not move for a new trial in the alternative. This motion was denied by Judge Miller.

The defendant, Johnston's Fuel Liners, Inc., appeals from the judgment against said defendant in favor of the plaintiff, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, in the sum of $3,024.34 plus costs, dated February 5, 1962, and also from the judgment of $17,710 in favor of Leonard Prince and against the defendant, dated January 27, 1962. The defendant, Johnston's Fuel Liners, Inc., also appeals from the order denying the motion of the defendant, Johnston's Fuel Liners, Inc., for judgment notwithstanding the verdict.

A brief summary of the facts follows.

On Sunday, the 31st day of July 1960, Larry King, an employee of Johnston's Fuel Liners, Inc., arrived at Regent, North Dakota, with a load of gasoline to be unloaded at the bulk station of the defendant, Leonard Prince.

Leonard Prince had ordered the gasoline through another driver who had conveyed the request to the office of Johnston's Fuel Liners, Inc. The gasoline was transported from Newcastle, Wyoming, to Lemmon, South Dakota, where Larry King took over the load and delivered it to Regent, North Dakota.

King inquired at the garage and implement establishment owned by Leonard Prince and there was told to proceed to the bulk plant to unload the gasoline.

While stopping at the railroad tracks en route to the bulk plant, King was met by Roger Prince, the son of Leonard Prince, who was employed by his father.

After a short conversation, Roger Prince proceeded in his own vehicle to the bulk station where Larry King parked the truck and trailer preparatory to unloading near tank No. 3, which was the tank used for storing regular gasoline.

As it was impossible to unload any of the gasoline until certain padlocks on certain valves were unlocked, Roger Prince proceeded to unlock various padlocks attached to certain valves connected to the receiving equipment owned by Leonard Prince.

The transporting equipment consisted of a Kenworth truck with a tank mounted thereon and a tank trailer connected thereto.

The capacity of the truck tank and trailer tank exceeded 8,000 gallons.

The capacity of receiving tank No. 3 was approximately 17,300 gallons.

The truck was equipped with a small gasoline-powered pump engine for use in unloading the truck and trailer tanks, which

engine was placed by Mr. King in a slight depression between tank No. 3 and the truck and trailer.

After unlocking the afore-described padlocks, Roger Prince assisted Larry King with the hoses, but the connections to the pump, to the valve on the trailer tank, and to the valve on receiving tank No. 3 were made by Larry King.

In the process of making the connections, it was discovered that a certain fitting on the pump was missing, and Roger Prince found a fitting in the Prince warehouse which was used by King to make the proper connection.

Neither Roger Prince nor Larry King measured the contents of tank No. 3 to determine whether the tank would hold the gasoline in the truck tank and trailer tank, and neither asked the other to do so. In fact, neither of the said parties knew how much gasoline was contained in the receiving tank, nor did he know the capacity of the tank. A calibrated measuring stick which could have been used to measure the contents of the tank was located in the warehouse, but was not made available to Mr. King.

The records showing the contents of the storage tank were located in a locked safe of the Regent Oil Company office, and a chart which would have permitted an interpretation of the calibration on the measuring stick, had it been used, also was in the said office. The measuring stick, however, could have been used without the chart to determine whether the tank was empty, partially full, or nearly full, and if it had been used it might have prevented an overflow.

When the hoses were properly connected, Roger Prince apparently opened the valve attached to the bottom of tank No. 3 while Larry King opened the valve attached to the trailer tank, allowing a gravity flow to the pump. Some difficulty was met in trying to start the pumping process and, in attempting to prime the pump, some gasoline was spilled at the pump engine.

Attached to the top of receiving tank No. 3 was a vent which permitted vapor to escape from the tank when the tank was being filled and permitted air to enter the tank when the tank was being emptied.

When the trailer tank was emptied, the hose was transferred to the truck tank, and unloading of the truck tank was then begun. In changing the hose from one tank to the other, about a gallon of gasoline was spilled by King at the trailer.

At about this time, Leonard Prince, the owner of the bulk station, arrived at the scene and his son, Roger Prince, left the scene.

Leonard Prince asked Larry King if the gas engine was the regular equipment used to unload the gasoline, but he did not stop the use of the engine nor did he offer the use of his electric motor.

It was a warm, still afternoon, with the temperature being somewhere between 85 and 100 degrees Fahrenheit.

The pump engine which was being used was a Briggs & Stratton gasoline engine, to which was attached a metal strap which, when depressed, would stop the engine by shorting out the spark plug. Testimony was elicited to the effect that stopping an engine of this kind by this process usually would cause a spark. The spark plug was not shielded from vapor.

Some testimony was to the effect that a pump operated from the power of the truck engine might have been safer.

Other testimony indicated that vapor escaping from gasoline on a warm day is heavier than air and would tend to settle to the ground and lie in depressions, and that if a spark were generated this spark could cause said vapor to explode.

Some testimony was to the effect that an electric pump, properly shielded, would have been the safer mechanism to use in unloading the gasoline, and that the defendant, Leonard Prince, had such a pump, but that he did not make it available to Larry King.

King apparently was not aware of the fact that the electric pump was available.

After gasoline had been pumped from the truck tank into tank No. 3 for quite some time, Larry King noticed that the pump engine was laboring, losing r.p.m.'s, indicating that the engine probably was overloaded, so Mr. King turned off the fire valve on the truck tank and then proceeded to the pump engine.

King's testimony as to what happened immediately following the closing of the fire valve on the truck tank is derived from four sources:

1. At the trial, he stated that he was leaning down at the time of the explosion and that he was in the act of shutting off the engine, although he did not know how much of the act he had completed;

2. In his deposition prior to the time of trial, Mr. King stated that he was in the act of shutting off the engine when the explosion occurred;

3. In a conversation at a Dickinson hospital with Mr. Ellsworth, who was employed by the railroad company, Mr. King stated that, at the time of the explosion, he was reaching down and pushing the metal bar on the engine against the spark plug; and

4. In a statement in the Dickinson hospital taken down by a court reporter, Mr. King stated that he had "stepped over and shut the pump off, that's when it blew up."

In any case, viewing the evidence most favorable to the verdict, it would appear that an explosion took place at or near the pump engine and that a fire started thereafter near the fence between the pump engine and receiving tank No. 3 when the premises were wholly in control of the defendant and the third-party defendant. The fire which erupted at the time of the explosion on the premises continued until it had destroyed the plaintiff's property, for which the plaintiff was awarded damages by the jury.

On the question of sufficiency of the evidence to support the verdict, it should be noted that the defendant, Johnston's Fuel Liners, Inc., and the third-party defendant, Leonard Prince, were engaged here in handling gasoline, which is almost universally considered to be a dangerous commodity when handled improperly or carelessly.

In the case of Westland Oil Co. v. Firestone Tire & Rubber Co., 143 F.2d 326, at 330, the Eighth Circuit Court of Appeals, in discussing an operation involving unloading of gasoline, had this to say:

"Plaintiff was engaged in the handling of a highly inflammable and somewhat explosive material or substance. The process was obviously fraught with danger and required special knowledge and skill and the exercise of care commensurate with the hazards involved."

Both the defendant and the third-party defendant had a duty to exercise such care as reasonable men would have exercised in the handling of a commodity which was potentially dangerous if mishandled, so that non-negligent persons owning or using property on adjacent premises would not be damaged by the failure to use such care on the part of said defendants.

Our law supports this proposition in general, as indicated by Section 9-10-06 of the North Dakota Century Code, which reads as follows:

"Every one is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself. The extent of the liability in such cases is defined by sections 32-03-01 to 32-03-19, inclusive."

This statute is derived from Section 979 of the Code of Civil Procedure, 1877 Revised Codes of Dakota Territory.

That "ordinary care" varies with the circumstances and dangers involved is supported by the authors of Corpus Juris Secundum, as indicated by the following:

"The duty of care is commensurate with the danger present in a situation or incident to an operation or instrumentality, and a person engaging in an act which the circumstances indicate may be dangerous must take all the care which prudence would suggest to avoid injury. The greater the danger the greater is the care required, so that a very high degree of danger calls for a very high degree of care, which, however, amounts merely to ordinary care in view of the situation and circumstances. What would be ordinary care in a case of extraordinary danger would be extraordinary care in case of ordinary danger, and what would be ordinary care in a case of little danger would fall below the required standard in a case of great danger." 65 C.J.S. Negligence § 11, p. 396.

In failing to ascertain the capacity of the receiving tank and in failing to observe carefully the filling of the tank to prevent the overflow of the receiving tank, both parties could have been found by the jury to have omitted to do an act or acts, the accomplishment of which would have prevented the overflow of gasoline and the subsequent fire which consumed the plaintiff's property.

In this respect, we believe the jury could have found that both were negligent and, if both were concurrently negligent, neither can recover damages from the other. Hjermstad v. Petroleum Carriers, Inc., 74 S.D. 406, 53 N.W.2d 839.

The jury could have found that, when Roger Prince helped Larry King in the unloading process in connection with the hose, in finding a fitting for the pump, and in opening the valve to tank No. 3 while Larry King attached the hose, etc., the parties acted jointly through their agents.

The jury also could have found that Larry King stopped the engine after discovering that tank No. 3 was overflowing, and that this was done after taking time to shut off the fire valve on the truck tank, and that gasoline was pouring over or spilling over the side of tank No. 3 at the rate of one and one-half gallons per second.

Taking the evidence most favorable to the verdict, the explosion could have occurred when Larry King shut off the engine by shorting out the spark plug, thus causing a spark to be discharged in an atmosphere filled with gasoline vapor surrounding the pump engine.

The established rule is that questions of negligence, contributory negligence, and proximate cause are questions of fact in tort actions unless the evidence is such that reasonable minds can draw but one conclusion therefrom.

"It is the established rule of this Court that questions of negligence, contributory negligence and proximate cause are questions of fact for the jury in a personal injury action unless the evidence is such that reasonable minds can draw but one conclusion therefrom. Leonard v. North Dakota Coop. Wool Marketing Association, 72 N.D. 310, 6 N.W.2d 576; McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771; Reservation Motor Corporation v. Mayer, 77 N.D. 431, 43 N.W.2d 537; Skramstad v. Miller, 78 N.D. 450, 49 N.W.2d 652; Goulet v. O'Keeffe, N.D., 83 N.W.2d 889, 36 A.L.R.2d 8; Gravseth v. Farmers Union Oil Company of Minot, N.D., 108 N.W.2d 785." Bauer v. Kruger, N.D., 114 N.W.2d 553, at 556.

In the instant case, we do not believe that the facts were such that but one conclusion could be drawn therefrom by reasonable minds.

Our court has also established the rule that, on motion for judgment notwithstanding the verdict, the evidence will

be construed most favorably to the party against whom such judgment is sought. Missouri Slope Livestock Auction, Inc., v. Wachter, N.D., 107 N.W.2d 349.

The appellant, Johnston's Fuel Liners, Inc., refers the court to the case of Westland Oil Co. v. Firestone Tire & Rubber Co., 8 Cir., 143 F.2d 326, to support its contention that, in a case somewhat similar to the instant case, the court upheld the lower court's action in directing a verdict for the defendant, thus finding the evidence insufficient to submit the case to the jury. In that case, the action was brought by the party who handled the pumping of gasoline against the one for whom the pumping was done, which would involve the issue of contributory negligence as it might apply between Johnston's Fuel Liners, Inc., and Leonard Prince in the present case. The Westland case did not involve an action by a non-negligent neighbor who was damaged by the negligent acts of two participants whom the jury could find were acting as joint tort-feasors.

An indication that the facts were not similar in the Westland case may be seen from a statement of the court as follows:

"The situation of the parties here is somewhat unusual in that plaintiff seeks to recover damages for a fire on its own premises, resulting from the operation of equipment in its exclusive possession and control and operated by itself." Westland Oil Co. v. Firestone Tire & Rubber Co., 143 F.2d 326, at 329.

This obviously was not the situation in the case at bar. Here, both parties took part in the unloading operation, and both parties were represented at the scene throughout.

The argument that the jury verdict was based on speculation suggests that the case must be supported by direct testimony.

The trial court's instructions which were not objected to and thus are the settled law of this case were as follows:

"The evidence offered to prove any fact in these cases may be either direct evidence of the fact or circumstantial evidence, or be a combination partly of direct and partly of circumstantial evidence. Direct evidence is testimony of witnesses who testify directly to the facts sought to be proven, while circumstantial evidence is the proof of facts and circumstances from which the fact to be proven may be arrived at by such just and reasonable deductions or inferences from the acts, facts and circumstances proven, as the guarded judgment of reasonably prudent and cautious men would ordinarily draw therefrom.

"This does not mean that you may resort to conjecture or surmise or be permitted to fancy or imagine situations or circumstances which do not appear in the evidence. The facts and circumstances proven should concur to show not only the particular negligence as the proximate cause of the loss and consequent damage to the parties concerned, but they must be inconsistent with any other rational conclusion.

"You have been instructed that before a plaintiff can recover, it or he must prove by a fair preponderance of the evidence that the defendant or defendants were guilty of negligence and that such negligence was the proximate cause of such plaintiff's damages. In this connection, however, I instruct you further that such negligence need not be the sole cause of the damages. It is sufficient if the negligence of the defendant or defendants is an efficient cause without which the injury would not have resulted. The fact that more than one cause combines to produce an injury does not relieve the defendant or defendants from liability because it was responsible for only one of them, it being sufficient that the defendant's negligence, if such you find existed from a fair preponderance of the evidence, is an efficient cause with-

out which the injury would not have resulted. However, it must appear that a defendant was responsible for one of the causes which resulted in the injury. It need not be the sole cause nor the last or nearest cause, but it is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the damages."

Considering the facts in light of these instructions, we believe that reasonable minds could have inferred from the direct and the circumstantial evidence in this case that both parties were negligent and that their negligence jointly was the proximate cause of the damages complained of.

A cause, to be a proximate cause, need not be the last negligent act in point of time.

"The proximate cause is ascertained and fixed by determining the responsible cause, without regard to its time or place in the succession of events that resulted in the injury. That is to say, it is not material whether such cause be first or last in the succession of events that cause the injury; if it be the responsible cause, it will be the proximate cause." Peru Heating Co. v. Lenhart, 48 Ind.App. 319, 95 N.E. 680.

In the instant case, even though Larry King's action in stopping the pump engine may have been the last act prior to the explosion and fire, it does not become the sole negligent act or proximate cause of damages claimed, nor is it such an intervening act as to make the original negligent failure on the part of both parties—to ascertain the capacity of the receiving tank and to observe carefully the filling of the tank to prevent an overflow—not the proximate cause.

"An intervening force is one which actively operates in producing harm to another after the negligent act of the original actor has been committed, and the question whether an intervening force is such as to relieve the original wrongdoer of liability is determined by many considerations, in accordance with common understanding, and in view of the circumstances existing at the time. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences.

"An intervening efficient cause which relieves a negligent wrongdoer of liability is, and must be, a new and independent force which breaks the causal connection between the original wrong and injury, and which itself becomes the direct and immediate cause of the injury. It must be more than a mere concurrent and contributing cause; it must be a responsible cause or a superseding cause, that is, one which has superseded the original act or been itself responsible for the injury. One whose negligence combines or concurs with an independent intervening cause in producing the injury is liable, even though his negligence alone, without such independent intervening cause, would not have produced the injury." 65 C.J.S. Negligence § 111, pp. 688–690.

The case clearly resembling the case at bar referred to this court is that of Hjermstad v. Petroleum Carriers, 74 S.D. 406, 53 N.W.2d 839, wherein the court said:

"The jury by its verdict determined that the proximate cause of the fire was the negligence of Mr. Stanislaus. Whether the negligence of Mr. Stanislaus was the sole proximate cause of the fire is not material because in any event it was a concurring cause, and this court has held that when an injury occurs through the concurrent negligence of two persons, and would not have happened in the absence of either[,] the negligence of both is the proximate cause of the injury. Krumvieda v. Hammond, 71 S.D. 544, 27 N.W.2d 583."

The third-party defendant contends that the verdict in the instant case was based on speculation, and thus should be set aside. In support of this view, he quotes from the case of Westland Oil Co. v. Firestone Tire & Rubber Co., 143 F.2d 326, at 331, as follows:

"To submit to the jury a choice between probabilities is to permit them to conjecture or guess, and where evidence is equally consistent with two opposing hypotheses it is without probative force and tends to support neither. Parker v. Gulf Refining Co., 6 Cir., 80 F.2d 795; E. I. Du Pont De Nemours & Co. v. Baridon, 8 Cir., 73 F.2d 26. As the proof rests upon circumstances, the circumstances must do more than bring plaintiff's theories within the realm of possibilities. Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568; Epperson v. Midwest Refining Co., 8 Cir., 22 F.2d 622. The verdict of a jury must have more than conjecture or surmise in its support. Balding v. Andrews et al., 12 N.D. 267, 96 N.W. 305; Scheid v. Cavanagh, 65 N.D. 596, 260 N.W. 619; Broughton v. Standard Oil Co. of N.J., 201 N.C. 282, 159 S.E. 321; Goulett's Adm'r v. Grand Trunk Ry. Co., 93 Vt. 266, 107 A. 118; McBride v. Paluxy Asphalt Co., Tex.Civ.App., 164 S.W.2d 32."

This court, in the case of Farmers' Mercantile Co. v. Northern Pacific Railway Co., 27 N.D. 302, 146 N.W. 550, at 555, refers to the rule of the probabilities stated in the case of Adams v. Bunker Hill & Sullivan Mining Co., 12 Idaho 637, 89 P. 624, 11 L.R.A.,N.S., 844, summarizing that rule as follows:

"Where the evidence in a personal injury case is so uncertain as to leave it equally clear and probable that the injury resulted from any one of a number of causes that might be suggested, then and in that case a verdict for plaintiff would be pure speculation and could not be sustained; but where the evidence, although circumstantial, is such that it would appear possible that the injury resulted from any one of several causes, and yet it points to the greater probability that it resulted from the specific cause charged by the plaintiff, a nonsuit should not be granted. In the latter case the jury would be justified in returning a verdict in favor of the plaintiff, although it be possible that the injury may have resulted from some other cause. The law does not anticipate or attempt to exclude mere possibilities. If, upon any fair construction that a reasonable man might put upon the evidence, or any inference that might reasonably be drawn therefrom, the conclusion of negligence can be arrived at or justified, then the defendant is not entitled to a nonsuit, but the question of negligence should go to the jury."

In the case of Farmers Home Mutual Ins. Co. of Medelia, Minnesota v. Grand Forks Implement Co., 79 N.D. 177, 55 N.W.2d 315, at 318, this court said:

"If the evidence of circumstances will permit a reasonable inference of the alleged cause of injury and exclude other equally reasonable inferences of other causes, the proof is sufficient to take the case to the jury. 65 C.J.S. Negligence § 244, pages 1091, 1092. If on the other hand, plaintiffs' proof is such that it is equally probable the injury was due to a cause for which defendant was not liable a prima facie case is not established."

This statement of the rule to be applied in cases of circumstantial evidence is to the same effect as the "greater-probability" rule cited in the earlier case of Farmers' Mercantile Co. v. Northern Pacific Railway Co., 27 N.D. 302, 146 N.W. 550.

When this case was originally argued, it was contended by the respondent, Leonard Prince, that there was no evidence of negligence on his part, but that in any event it was equally probable that the ex-

plosion was due to causes other than those for which he was responsible and that, therefore, a finding that his negligence was a proximate cause of the explosion was purely speculative in character.

■ Upon reargument, this respondent contends that the evidence conclusively establishes that there is a greater probability that the explosion was caused by gasoline vapors which were expelled from the storage tank during the process of filling than from the overflowing gasoline. For that reason, he urges that the sole proximate cause of the damages was the negligence for which this respondent was not responsible.

We are of the opinion, however, that the source of the gasoline vapor which exploded is not necessarily a controlling factor in the conclusion that the jury's verdict should be sustained. It is undisputed that the damages, for which recovery is sought, resulted from the fire which followed the explosion. There is testimony in the record that the fire first appeared along the fence bewteen the storage tanks and the pump, a flash went up the side of the storage tank, and there was no fire in the immediate vicinity of the pump where the explosion was set off. It is undisputed that overflowing raw gasoline had been running down the side of the tank for an indefinite period of time, prior to the explosion. Upon this evidence the jury could reasonably have found that the fuel for the initial fire which the explosion ignited was the gasoline from the overflow at the base of and upon the side of the storage tank. It would follow as a legal conclusion from such a finding of fact that the proximate cause of plaintiff's damages was the concurrent negligence of Johnston's Fuel Liners, Inc. and Leonard Prince. Hjermstad v. Petroleum Carriers, 74 S.D. 406, 53 N.W.2d 839.

The plaintiff has, therefore, established a prima-facie case based on evidence most favorable to the verdict and, as the evidence was such that reasonable minds could differ, the case properly was one for the jury to decide.

For reasons stated, it was error for the Court to grant the motion of the third-party defendant, Leonard Prince, for judgment notwithstanding the verdict.

■ The third-party defendant, Leonard Prince, also urges that the trial court erred in failing to grant conditionally the third-party defendant's motion for new trial under Rule 50(c), N.D.R.Civ.P., and that this court, in the event that it reverses the trial court's order granting the judgment notwithstanding the verdict, now direct the trial court either to grant a new trial or remand this case to the trial court to reconsider this motion for new trial under Section 28–27–29, N.D.C.C.

In the instant case, the trial court said, in the third paragraph of the order for judgment notwithstanding the verdict:

"* * * That there being a total failure of proof on the proposition of proximate cause as it relates to the Third Party Defendant, Leonard Prince, an individual doing business under the trade name of Regent Oil Company, and it appearing further, from the exhaustive evidence adduced at the trial which consumed seven days, that there is no reasonable probability that this defect of proof can be supplied upon another trial, such new trial is therefore not ordered."

This language follows that portion of the order which granted the motion of said third-party defendant, Leonard Prince, for judgment notwithstanding the verdict.

The court having granted judgment notwithstanding the verdict, the only reasonable construction we can give the language which concludes that a new trial is therefore not ordered, is that the court ruled only on the motion notwithstanding the verdict and did not pass on the motion for a new trial.

The trial court thus did not comply with Rule 50(c), N.D.R.Civ.P., which reads in part as follows:

"Where the motion is made in the alternative, if the motion for judgment notwithstanding the verdict is granted, the court shall rule on the motion for new trial by determining whether it should be granted if the judgment is thereafter vacated or reversed. * * "

This being the case, justice requires that the respondent, Leonard Prince, be permitted to obtain a ruling of the trial court upon his motion for new trial; and, although the decision of this court is that the verdict of the jury be reinstated and judgment entered in accordance therewith, this shall be without prejudice to the rights of Leonard Prince to obtain from the trial court a ruling on his motion for new trial. La Bree v. Dakota Tractor & Equipment Co., 69 N.D. 561, 288 N.W. 476.

As to the real-party-in-interest issue and related issues raised by the appellant, it would appear that they are not applicable to the plaintiff, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, as it was its own insurer and thus actually was the real party in interest.

These latter issues are discussed in greater detail in connection with the opinions covering the cases of other plaintiffs whose cases were consolidated with this case for trial. Regent Coop. Equity Exchange v. Johnston's Fuel Liners, Inc., N.D., 122 N.W.2d 151; C. W. Newby v. Johnston's Fuel Liners, Inc. v. Leonard Prince, N.D., 122 N.W.2d 156.

This case is, therefore, remanded to the trial court with instructions to the said court to vacate the judgment notwithstanding the verdict and order judgment consistent with the verdict of the jury, subject to the right of the respondent, Leonard Prince, to proceed promptly to press for a ruling on his motion for a new trial.

MORRIS, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.