Judy E. ANDERSON, individually, and as surviving mother of Ricky Anderson, Plaintiff and Appellant,

v.

Melvin KROH, Defendant and Appellee.

Civ. No. 9749.

Supreme Court of North Dakota.

Nov. 3, 1980.

On Rehearing Jan. 8, 1981.

Zuger & Bucklin, Bismarck, for plaintiff and appellant; argued by Leonard H. Bucklin.

Kelsch & Kelsch, Bismarck, for defendant and appellee; argued by Robert Bennett.

PEDERSON, Justice.

Judy Anderson (Anderson) appeals from a judgment notwithstanding a jury verdict which awarded $93,261.50 in an action for wrongful death and destruction of property. The jury found defendant–appellee Melvin Kroh (Kroh) liable for negligent omissions resulting in a fire which killed Anderson's ten–year–old son Ricky and destroyed her personal property. In a memorandum opinion the court reported that it put aside the verdict because it could find no evidence of negligence or proximate cause. We reverse.

In March 1977, Anderson rented from Kroh a mobile home situated several miles west of Mandan. Kroh lived on the same property in a building to the north of the Anderson trailer. Anderson had learned of the mobile home through a want ad for renters. Anderson made a deposit of $200 and agreed to pay $250 per month pursuant to what apparently was a month–to–month lease.

From the time she moved in until May 28, 1978, Anderson had no trouble with the trailer's water heater except for one occasion. In October 1977 the flame in the water heater went out because the propane supply had been used up. The serviceman who delivered a new stock of propane relit the heater. Kroh owned the home for almost five years before Anderson rented it and, during that time also, the water heater functioned normally.

On May 28, 1978, Anderson discovered that the trailer was without hot water. At approximately noon she sent her twelve–year–old daughter, Shari, to notify Kroh that the water heater was not working. Kroh arrived, according to conflicting testimony, sometime between about 1:00 and 2:30 p.m. Kroh admitted having to light the heater at that time. Shari observed that Kroh needed "three or four matches" to start the flame, and both Kroh and Anderson agreed that he was there some ten minutes. However, Kroh claimed he had no difficulty lighting the heater. Anderson, Shari and Marjorie Pulkrabek, Anderson's hairdresser who was present at the time, all testified that Kroh returned to the trailer shortly after leaving the first time. Anderson said he worked again on the heater and Shari said "he re–lighted it." Kroh denied that he came and lit the heater a second time.

Whether it was once or twice that Kroh went to the trailer, he left Anderson with instructions to leave the door to the water heater compartment open.[1] This was in order to dry up the dampness which Kroh detected in the compartment. This dampness was noticed by Anderson, too, after Kroh left. During that afternoon and evening Anderson observed the flame burning to the side of and down from the water tank. She stated that the flame was "reddish–orange." A friend, Wayne Schiermeister, testified that he looked at the water heater in the evening of the same day. The flame, at that time, "was just kind of hanging in there fluttering."

1. The door was not inside the trailer. It could be opened only from outside the trailer.

Though Anderson and Schiermeister observed the various irregularities in the flame, they stated that they knew nothing of how the heater *should* operate. They were not alarmed because they assumed Kroh had competently taken care of the matter. Indeed, Kroh claimed a fair amount of experience with propane heating devices through his employment. He had always taken care of necessary repairs, and Anderson said that she made no attempt to take up this role. However, Kroh testified that all he had done was light the heater, even though he noticed dampness in the compartment. He examined a faucet on the heater for leakage but otherwise made no investigation, and specifically stated that he did not check the flue.

Schiermeister and Anderson left the trailer at about eleven that night to meet friends. Remaining at home were Anderson's four children, including Shari. When Anderson returned at about one o'clock in the morning, the trailer was on fire. Ricky did not get out of the house as did the other three children. He had gone to bed in his room and that is where he was found by the firemen. The trailer was a total loss, as was all of Anderson's personal property.

Schiermeister, Anderson, and one of Anderson's friends who was at the scene, Barbara LaFountaine, all testified that initially the fire was burning on the back portion of the trailer where the water heater was located. Richard Radspinner, Chief Deputy and Chief Investigator for the State Fire Marshal's office, testifying as an expert, stated that the "basic area of origin of the fire" was here determinable "without any great degree of difficulty." According to Radspinner, "the fire did start in the area of the water heater in the trailer house." In his official report, Radspinner attributed the cause of the fire to "a malfunction of either the controls or the burners of that water heater." However, the unit was too badly damaged in the fire to permit direct examination. Radspinner continued:

> "I might elaborate on that by saying that basically there are four things that will cause a fire, particularly in the house

or any building that is inhabited. One would be a heating system. Of course, one is an electrical system. Thirdly, in general is a human error–accident–and the fourth we describe as a deliberate act. Together with the heating system, we generally consider a heating system in this area to be a gas fire, an appliance, and we fairly well lump the gas fired water heater in as part of that rather than being a separate thing. Within that area of origin there were no other sources of ignition, no evidence of any other sources of ignition, no evidence of human error, accident, no evidence of a deliberate act, no evidence of an electrical involvement. We reduce then to the other source of ignition within the area of origin, which was the water heater."

Radspinner's testimony eliminating possible alternative causes was well corroborated by other witnesses.

Proceeding on the theory that an obstructed flue was responsible for the blaze, Anderson introduced evidence showing that a blocked flue can in fact cause a fire. There was testimony to the effect that an improperly operating flue produces certain symptoms, including condensation and dampness in the house or heater compartment, and an orange flame that flutters, burning downward and sideways for lack of oxygen.

The defense countered by showing that an orange flame can be due also to a shortage of fuel and that Anderson's propane tank may have been almost empty. Kroh established that a clogged flue will produce soot at the bottom of the water tank and will foul the surrounding air with a pungent odor. Kroh stated that when he lit the heater he discovered no sooty deposits on the tank nor any strong odor. No one else testified on these points.

An experienced water heater repairman, Martin Gunsch, testified that when a heater's flame goes out one should do more than merely relight it. He stated that "you should check the flue on any gas appliance you work on." Direct examination of Gunsch was concluded with the following exchange:

362

"Q. Well, Martin, isn't it enough simply if you are called because the water heater isn't working, isn't it enough to go—to just go and light it and walk away from it?

"A. Oh, no, Geez, you never want to do that.

"Q. Why not?

"A. Well, because it could be quite hazardous and you could light and your flue could be off, or else you could have a bad chimney, or else even if the water heater might have been— the valve might have been defective and therefore you are getting not the right mixture of air and gas so then therefore that could have been sooting a little bit and then you might not have enough draw up there and then it will come back down again, see.

"Q. Okay.

"A. Plus, you check it always to see if the valve shuts off because there is a safety on that also, just like your thermocoupler. The valve will come off too.

"Q. If the gas water heater goes out, then you are saying you should find out why it went out?

"A. Definitely.

"Q. You just don't keep lighting it once and then twice and walk away from it?

"A. You light it, but you should have a reason why it went out. You should know why it went out."

Another maintenance man testified on behalf of Kroh, and he too left the impression that checking the flue is a routine matter on any service call.

■ The rule followed by this court in reviewing a judgment notwithstanding the verdict is as follows:

"When ruling on a motion for a directed verdict or for judgment notwithstanding the verdict, the court must decide whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, reasonable men could reach but one conclusion as to the verdict, or, otherwise stated, whether the evidence, viewed most favorably to the party against whom the motion is made, and giving that party the benefit of all reasonable inferences from the evidence, compels a result with which no reasonable person might differ." *Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182, 187 (N.D.1973).

See also, *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208, 217 (N.D.1979). "Under our practice, verdicts are not readily upset." *Riebe v. Riebe*, 252 N.W.2d 175, 177 (N.D. 1977).

■ The facts clearly indicate the existence of a duty owed Anderson by Kroh. Section 323 of the 2d Restatement of Torts provides authority for this conclusion. It reads:

"One who undertakes, gratutiously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking."

Kroh's attempt to light the heater, and Anderson's reliance upon his actions, were sufficient to invoke this rule and to place upon Kroh a duty of reasonable care. Kroh gave no disclaimer or warning concerning his competence, and thus can be held to the standard to which others performing similar acts are held.

■ Kroh argues that the verdict was based on speculation and impermissibly attenuated inferences. In a negligence action the plaintiff must, of course, affirmatively prove lack of due care and causation. A plaintiff cannot rest on a presumption arising from the occurrence of an accident. *Bismarck Baptist Church v. Wiedemann Industries, Inc.*, 201 N.W.2d 434, 440 (N.D.

1972). Anderson expressly disclaims reliance on the doctrine of res ipsa loquitur and asserts that she has shown specific negligence. See *Foerster v. Fischbach–Moore, Inc.,* 178 N.W.2d 258 (N.D.1970). She claims further that a causal relationship was reasonably deducible from the evidence.

■ Taking as true the evidence most favorable to Anderson, we must reject the lower court's ruling that proof of negligence was insufficient to support the verdict. Martin Gunsch stated that when the flame in a water heater goes out, the cause should be determined. Kroh failed to do this not once, but twice. The possible implication of the dampness which Kroh admitted discovering, and the fact that the flame was abnormally colored, fluttering, and burning downward, make his omission even more significant in light of his experience and special knowledge. The record discloses that Kroh had been a mechanic for 15 years, for Northern Tank Line for five years, and for Coal Creek–hooking up heaters–and considered himself self–trained in the lighting and functioning of heaters and their thermocouples. It is not unreasonable to conclude, therefore, that, from the evidence before it, the jury could reasonably have found a failure by Kroh to exercise due care.

■ That Kroh was negligent does not settle the issue of liability, for a jury must be reasonable in its further finding that negligence was the proximate cause of the damage. Again, we believe a reasonable person could well conclude that Kroh's misfeasance was a direct cause of the fire. In the opinion of an expert, Mr. Radspinner, the fire originated in the area of the water heater and the only plausible explanation was a malfunction of the unit. However, unlike the plaintiff in *Bismarck Baptist, supra,* Anderson submitted substantial evidence in addition to expert opinion. Corroborating Radspinner, several witnesses saw the fire at a relatively nascent stage and reported that its location corresponded with that of the water heater compartment. It was established that a blocked flue can cause a fire, and there is evidence implying that the flue was indeed blocked. Contrary evidence was received but does not authorize the court to set aside the verdict. *Everson v. Partners Life Ins. Co.,* 268 N.W.2d 794, 797 (N.D.1978). Finally, it is noted that the record shows that up to May 28, 1978, there had never been any problems with the heater, that on May 28 the flame went out, that Kroh relit it twice with apparent difficulty, that the flame exhibited unusual and even disturbing traits the possible causes of which Kroh failed to investigate, and that on May 28 the trailer was consumed in a fire which started in the area of the heater. We cannot say that any reasonable person would be compelled to conclude that Anderson failed to satisfy the requirements enunciated in *Bismark Baptist, supra.*

The judgment of the district court is reversed and we remand for entry of judgment on the verdict.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

On Petition for Rehearing

PEDERSON, Justice.

The jury returned a verdict for Anderson. Kroh moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Contrary to the requirement of Rule 50(c), NDRCivP, the trial court, in granting the motion for judgment notwithstanding the verdict, failed to make a conditional ruling on the alternative motion for new trial. Kroh made no objection to this omission on the part of the trial judge.

On the appeal to this court Anderson sought a reversal of the order granting judgment notwithstanding the verdict and the judgment itself. In her brief to this court she asked:

"... Alternatively, if for some reason judgment is not entered in accordance with the jury verdict, a new trial should be held with the jury properly instructed according to the correct law regarding suppliers of products and landlords, and the jury should not be restricted to issues of negligence."

Kroh's argument to this court did not respond to this alternative remedy suggested by Anderson. Instead, on a petition for rehearing pursuant to Rule 40, NDRAppP, Kroh suggests that we have overlooked or misapprehended the point in failing to remand with directions that the trial court now make a determination upon Kroh's alternative motion for new trial. Kroh relies upon this court's statement in *Johnson v Frelich*, 153 N.W.2d 775, 779 (N.D. 1967):

> "This being true [that the trial court granted judgment notwithstanding the verdict but apparently deemed it not necessary to pass on the motion for new trial], justice requires that the defendant be permitted to obtain a ruling of the trial court on his motion for a new trial."

Without a discussion of the type of circumstances which would warrant a remanding by this court to permit the moving party to press promptly for a ruling from the trial court on an alternative motion for new trial, this court, in *Johnson v. Frelich, supra*, relied significantly upon *Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners*, 122 N.W.2d 140 (N.D. 1963), which, at Syllabus 5, held specifically that:

> "Where a motion is made for a judgment notwithstanding the verdict and, in the alternative, for a new trial and the trial court grants the motion for judgment notwithstanding the verdict but does not pass conditionally on the motion for a new trial, as required by Rule 50(c), N.D.R.Civ.P., on reversal of the trial court on appeal, the case *may* be remanded to permit the moving party to press promptly for a ruling from the trial court on his motion for a new trial." [Emphasis supplied.]

When we peruse the body of the opinion, we find the conclusory statement that "justice requires" an opportunity for the movant to obtain a trial court ruling upon the alternative motion for new trial. The holding in *Johnson v. Frelich, supra*, at Syllabus 4, likewise said that the case "may" be remanded and in the body of the opinion it stated that "justice requires" a remand.

We requested Anderson to respond to Kroh's petition. In that response Anderson points out a number of options available to this court, based upon federal court interpretations of Federal Rule 50 from which the North Dakota rule is copied, as well as our own previous decisions. We discussed some of these matters in the opinion on Petition for Rehearing in *Riebe v. Riebe*, 252 N.W.2d 175, 179 (N.D. 1977). Possible alternatives are:

(1) We *may*, if justice requires it, remand for a trial court ruling on the motion as we have done in *Johnson v. Frelich, supra*, and *Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners, supra*, and in other cases.

(2) We *may*, "where the motion for judgment raises the same questions as those raised by the alternative motion for a new trial," refuse to permit the trial court to consider the motion for new trial on the basis that reversal of the judgment ipso facto disposes of the grounds for a new trial. See Annot., 69 ALR2d 449, § 36(b).

(3) We *may* adopt the legal fiction that the failure of the trial court to rule on the alternative motion for new trial constitutes a denial of the motion and we would proceed to determine whether the trial court abused its discretion in denying the motion. See 5 C.J.S. Appeal & Error § 1494; *Sadler v. T. J. Hughes Lumber Company, Inc.*, 537 P.2d 454, 459 (Okl.App. 1975); and *Mays v. Pioneer Lumber Corporation*, 502 F.2d 106 (4th Cir. 1974).

(4) We *may* deem the failure of the movant in the trial court to press for a ruling on his alternative motion to be a waiver of the motion. See *Medical West Building Corporation v. E. L. Zoernig & Co.*, 414 S.W.2d 287, 295 (Mo. 1967).

■ The purpose in providing for the alternative motions and requiring the trial court to rule on both is, of course, to avoid bifurcated appeals. See Committee Notes, Rule 50, NDRCivP. Our past decisions may be interpreted to allow this purpose to be easily frustrated. To prevent that and, in light of a continuing increase in this court's case load, judicial economy requires that

we, in the future, consider any motion not pursued in the trial court abandoned unless justice requires otherwise. This type of rule is familiar and will serve well the above stated purpose. Thus we are, in effect, giving it a "Sunburst" type of treatment as we did in *Kitto v. Minot Park District,* 224 N.W.2d 795, 804 (N.D. 1974), and in other cases.

██ For this case, however, fairness requires that we continue to follow the tradition established by this court's previous rulings, and especially in light of Anderson's suggestion in the original brief, filed on her behalf, that a new trial was an alternative. We remand for consideration of the unresolved motion for new trial. The mandate shall issue forthwith.

ERICKSTAD, C. J., and VANDE WALLE, J., concur.

SAND, Justice, dissenting, on petition for rehearing.

I reluctantly disagree with the proposed disposition of the petition for rehearing by Justice Pederson. However, I agree with the part that states, in effect, from here on in the rule will be applied as written.

A procedural rule duly adopted by the Supreme Court is the equivalent of a law enacted by the Legislature on procedural matters as distinguished from a substantive matter.

Under the present Judicial Article, the authority to promulgate procedural rules is vested in the Supreme Court. Prior thereto procedural matters were generally the result of either a legislative enactment or judicial promulgation. Generally, the latest product of either branch prevailed.

Rule 50 of the North Dakota Rules of Civil Procedure was initially adopted by this Court in 1957. Subdivision (c) thereof has not been amended since its adoption, and provides as follows:

"(c) Same—Conditional Ruling on Grant of Motion.

"(1) If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial, and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court."

This rule is self-explanatory.

The official Procedure Committee Notes are silent as to Rule 50(c). However, Bucklin's Commentaries (1971), which had been made available to the Bar as related to this Rule, in part states:

"Where an alternative motion is made, a trial court is required by Rule 50 to rule on both the motion for a new trial and a motion for judgment. The purpose is to avoid two appeals which could otherwise result if the trial court rules on only part of the alternative motion and is found wrong. The rule adopts the procedure described in some detail in *Montgomery Ward & Co. v. Duncan,* 331 U.S. 243 [61 S.Ct. 189, 85 L.Ed. 147] (1940)."

In 1963 this Court, in *Chicago, Milwaukee & St. Paul Pacific Railroad v. Johnston's Fuel Liners, Inc.,* 122 N.W.2d 141 (N.D. 1963), had under consideration Rule 50(c) where a party moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The trial court grant-

ed judgment notwithstanding the verdict.[1] On appeal, this Court vacated the judgment notwithstanding the verdict and remanded the case to the trial court for a ruling on the motion for a new trial. Later, in 1967, this Court, in *Johnson v. Frelich*, 153 N.W.2d 775 (N.D. 1967), followed the precedent set in *Johnston's Fuel Liners, Inc., supra.*

The record before us does not disclose that Kroh relied upon the above-mentioned North Dakota cases for not having requested the trial court to make a conditional ruling on the motion for a new trial. Nor does the record contain any information that either Kroh or the trial judge was misled as a result of the two North Dakota cases. Furthermore, Kroh does not contend that the cases in some manner were responsible for the court's failure to act on the motion for a new trial.

In my opinion, it is the responsibility of the attorney to call to the attention of the trial judge certain rules that apply in a given situation if the trial judge sua sponte does not implement the appropriate applicable rule.

We have in numerous instances expressed a rule of law that if the attorney has not requested certain action to be taken or objected to the action taken by the trial court, the attorney's arguments on appeal on that point will not be seriously considered. As an example, our opinions are replete with case law expressing the legal concept that unless the attorney has either requested certain jury instructions or objected to them, a subsequent objection or allegation of error on appeal will not be given serious consideration, provided the proposed instructions were made available in sufficient time to the parties to examine them. This concept should apply to Rule 50(c), NDRCivP.

The statements in *Fuel Liners, Inc.* and *Frelich, supra,* may well have been prompted on the premises that the rules were a new product and that the court, in all probability, wished to give the practicing bar additional time to become acquainted with them and, therefore, declined to enforce them at that stage. Be that as it may, I believe ample time has since then expired to fully implement the rule and to apply it as it is. The Rule is not written in stone nor is it sacrosanct. If the Rule is too harsh then it should be changed, otherwise it should be followed.

I find it difficult to accept the proposition that a court, after going through a regular process in promulgating and adopting rules, should then fail to apply, follow or enforce them. This leads to the ultimate rhetorical question: "If the Supreme Court will not respect its rules which it has promulgated, will the court or its opinions be respected?" The answer is obvious.

I believe it is basically the attorney's responsibility to make sure that the proper procedures in accordance with the rules are adhered to and followed and call them to the attention of the trial judge. This responsibility is shared by the trial judge but should not be shifted to the trial judge. It is not an excuse, in my opinion, to merely show that a trial court did not act in accordance with the rules unless the attorney also informed the trial judge about the rule and the trial judge refused to act in accordance with the rules.

---

1. The opinion quotes the third paragraph of the order for judgment which granted the motion to the third-party defendant for judgment notwithstanding the verdict, as follows:

   "... that there being a total failure of proof on the proposition of proximate cause as relates to the third-party defendant Leonard Prince, an individual doing business under the trade name of Regent Oil Company, and it appearing further from the exhaustive evidence adduced at the trial which consumed seven days, there is no reasonable probability that this defective proof can be supplied upon another trial, such new trial is not ordered."

   This Court, with reference to the order for judgment, observed:

   "The Court having granted judgment notwithstanding the verdict, the only reasonable construction we can give the language which concludes a new trial is therefore not ordered, is that the court ruled only on the motion notwithstanding the verdict and did not pass on the motion for a new trial."

In my view, regarding the alternatives set out in Justice Pederson's response on the petition for rehearing, I would select either number 3 that failure to rule on the alternative motion for a new trial constituted a denial of the motion and we would accordingly proceed to determine whether or not the trial court abused its discretion in denying the motion for new trial; or I would follow alternative number 4 that the failure of the movant in the trial court to press for a ruling on the alternative motion for a new trial constituted a waiver of the motion.

In any event, I would fully implement that provision of Rule 50(c) of the North Dakota Rules of Civil Procedure now rather than applying it in the future.

PAULSON, J., concurs.