Alice **EMERY**, Individually and as Trustee for the North Dakota Workmen's Compensation Bureau, Appellant,

v.

The **NORTHERN PACIFIC RAILROAD COMPANY** et al., Appellees.

No. 18345.

United States Court of Appeals Eighth Circuit.

Jan. 18, 1967.

---

Mart R. Vogel, Fargo, N. D., for appellant. Thomas A. Davies, Fargo, N. D., was with him on the brief.

E. T. Conmy, Jr., of Conmy, Conmy & Feste, Fargo, N. D., for appellees.

Before VAN OOSTERHOUT and GIBSON, Circuit Judges, and NICHOL, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal by plaintiff, Alice Emery, from final judgment dismissing her complaint against the defendants, the Northern Pacific Railroad Company, William Norman, engineer, and Thomas McMahon, fireman, wherein she sought damages for the wrongful death of her husband, Bishop Emery, as a result of a collision at a railroad crossing at the outskirts of Grand Forks, North Dakota, between defendant's train and a Volkswagen bus owned and operated by Reverend Bigelow in which Bishop Emery was riding. Liability is predicated upon negligence. Jurisdiction, based upon diversity of citizenship and the requisite amount, is established. The judgment of dismissal was based upon a jury verdict in favor of all defendants.

Bishop Emery, head of the Episcopal church in North Dakota, was at the time of the collision occupying the right-hand front seat of Reverend Bigelow's Volkswagen. The vehicle was returning to Grand Forks from Walshville where Reverend Bigelow served as pastor and where Bishop Emery had made his annual inspection visit. Both had official engagements at Grand Forks later in the day. The Volkswagen, as it approached defendant's tracks at the outskirts of Grand Forks, was traveling in a southerly direction on a gravel road at a speed of forty-five miles per hour, within the prescribed speed limits. The train was approaching the intersection, traveling east, at a speed of forty-five miles per hour. The collision occurred at 1:55 p. m. on February 23, 1964. The weather was clear.

The accident crossing is protected by the usual crossbucks warning sign. No statutory train speed limit is in effect at the crossing. There is substantial evidence that the train crew gave the required statutory warning of its approach by sounding the horn. Other facts will be developed during the course of the opinion.

Plaintiff sets out eight specifications of negligence, including failure to maintain a proper lookout, excessive speed under existing circumstances, and last clear chance. Defendants, by motion for directed verdict, raised the issue of the sufficiency of the evidence to sustain any specifications of negligence and urge here that the simple solution of this case is to determine that the court erred in failing to sustain their motion upon such ground. No cross-appeal has been taken. The printed record does not set out the full evidence bearing upon the negligence issues.

While the evidence on negligence is not strong and might well be such as to lead the fact finder to a conclusion that no actual negligence proximately causing the accident has been established, we are not justified upon the record made to say as a matter of law that the defendants are entitled to a directed verdict upon the issue of defendants' negligence.

The only surviving witness able to give any substantial evidence on the circumstances leading up to the accident was Thomas McMahon. He was the fireman on the train and was situated on the side of the engine cab from which the Volkswagen was approaching. His testimony is rather ambiguous. He first observed the car when the train was about 1700 to 2000 feet from the intersection. The car was then about the same distance from the intersection and both car and train maintained a speed of about forty-five miles per hour up to the crash scene. McMahon first stated that the train was 500 to 600 feet from the crossing when he concluded that the car was not going to stop and that an emergency existed. Later he raised the distance to 700 to 800 feet, and subsequently when examined by his counsel he fixed the distance at 250 feet. When he discovered the emergency, he shouted to the engineer to put the train in emergency but the engineer did not hear him, so McMahon put on the emergency brake himself when

the train was 150 to 200 feet from the crossing. Upon this conflicting testimony, it was for the jury to determine the point at which the fireman became aware of the emergency. The engineer testified that the train at the speed at which it was operating could be stopped in 800 to 900 feet by emergency braking. The train traveled 775 feet beyond the point of impact.

There is also conflicting testimony as to the obstructions and traffic at the collision crossing from which it might be possible for the jury to determine that the train was traveling at an excessive speed under existing circumstances.

It would also appear that the fireman's lookout for emergency situations will accomplish little if there is no effective means of conveying the information to the engineer.

Plaintiff's specifications of negligence, except the one relating to last clear chance, were submitted to the jury. No complaint either in the trial court or here is directed to the instructions submitting the negligence specifications to the jury. A detailed discussion of the facts relating to all such issues will serve no purpose.

Errors relied upon by the plaintiff for reversal are:

I. The Court erred in instructing the jury on contributory negligence.

II. The Court erred in instructing the jury that the deceased, Richard Emery, was under a continuing duty to exercise reasonable care for his own safety at all times.

III. The Court erred in instructing the jury on the doctrine of joint enterprise and in permitting the jury to find that the negligence of Mr. Bigelow, the driver of the car, was imputed to Bishop Emery, the passenger.

IV. The Court having instructed on contributory negligence and joint enterprise, erred in refusing to instruct on the last clear chance doctrine.

V. The Court, having instructed on joint enterprise and on imputation of negligence from driver to passenger, erred in refusing to instruct that the deceased driver, Mr. Bigelow, was entitled to the due care presumption.

VI. The Court erred in denying appellant's motion for a new trial.

Plaintiff's asserted errors are all directed at the court's instructions and such errors have been preserved for review by timely request for and exceptions to instructions. We now direct our attention to the errors asserted in the order in which they are above stated.

I.

The court submitted to the jury the issue raised by defendants' answer to the effect that the plaintiff could not recover if Bishop Emery himself was guilty of contributory negligence. Plaintiff by exception to instruction urges that there is no evidence to support a finding that the Bishop was negligent.

██ Contributory negligence is an affirmative defense and the burden of proving contributory negligence is upon the defendant. Olson v. Cass County Electric Co-op., Inc., N.D., 94 N.W.2d 506, 511. The standard to be applied in determining whether or not a party has been guilty of contributory negligence such as to preclude a recovery is whether his actions were those of an ordinary prudent person in the same circumstances and in the same position. Olson v. Cass County Electric Co-op., Inc., supra; Umland v. Frendberg, N.D., 63 N.W.2d 295, 299; Bagg v. Otter Tail Power Co., 70 N.D. 704, 297 N.W. 774, 778.

██ While under North Dakota law a passenger is not charged with the same duty to keep a lookout as is the driver, the passenger may be guilty of contributory negligence if he fails to warn the driver of an obvious danger, contributes to the accident, or acts in disregard of his safety. See Satterland v. Fieber, N.D., 91 N.W.2d 623, 626; Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526, 528.

██ In Jasper v. Freitag, N.D., 145 N.W.2d 879, 882, the court states:

"This court repeatedly and consistently has held that questions of negli-

gence, contributory negligence, and proximate cause of an injury are questions of fact for the determination of the jury, and that unless the evidence is such that only one conclusion can reasonably be deduced therefrom, such determination by the jury is final and binding on this court. It is only when the facts and circumstances are such that reasonable men can draw but one conclusion therefrom that the question of negligence and contributory negligence becomes a question of law for the court."

■ While we disagree with defendants' contention that the Bishop was guilty of contributory negligence as a matter of law, our search of the record satisfies us that there is substantial evidentiary support for a finding that the Bishop was guilty of contributory negligence.

Eight-year old Kimberly Schick testified that the Bishop was sitting in the right front seat of the car—the side facing the approaching train—and that immediately prior to the accident she heard the Bishop and the Bigelows talking and that no one gave any warning of the approaching train.

There is substantial evidence that the side windows were frosted, there were small icy spots in the road, and the road traveled was the usual route to Walshville; that the Bishop had likely traveled over the route on the way to Walshville on previous annual visits and thus had knowledge that they were approaching Grand Forks and the railroad tracks. The crossbucks sign was there for him to see.

The court instructed that Bigelow was entitled to a presumption that he was exercising due care; that the presumption is a form of evidence; that it will support a finding in accord with the presumption if there is no proof to the contrary and that it will support such a finding in the face of contrary evidence if your judgment so directs after weighing the conflicting evidence. The court committed no error in submitting to the jury the issue of Bishop Emery's contributory negligence.

### II.

■ Plaintiff next contends that the contributory negligence instruction is erroneous in stating that Bishop Emery had a continuing duty to exercise reasonable care for his own safety because such instruction cancels out the evidentiary presumption of due care on his part. As pointed out in the prior division of this opinion, there is evidence upon which a contributory negligence finding can be based. The instruction heretofore discussed on the presumption of due care as given properly accorded to the Bishop any benefit flowing from the presumption to which he was entitled.

### III.

■ Plaintiff has consistently urged that the court committed prejudicial error in submitting the joint enterprise and imputed negligence issue to the jury. The law as to what constitutes a joint enterprise appears to be fairly stated in the instructions. The essential elements of a joint enterprise are: (1) a common purpose and community of interests in the object of the enterprise, and (2) an equal right in the driver and the occupant to direct and control each other's conduct with respect to the operation of the automobile. See Bailey v. Pennington, 8 Cir., 274 F.2d 328, 334; 8 Am.Jur.2d Automobiles and Highway Traffic § 679.

■ We do not question the sufficiency of the evidence to support the first element. We find no evidence whatsoever to establish the second element. On the Sunday of the accident, Reverend Bigelow was driving his own automobile to Walshville to perform his regular pastoral duties there. As was his custom, he took with him his wife and another lady to serve as Sunday School teachers and his children and some other children for Sunday School attendance. For such occasional use of his personal automobile, Reverend Bigelow received a flat monetary allowance. Bishop Emery accompanied him upon this trip. There is no

evidence that the Bishop paid or agreed to pay any compensation for the transportation to and from Walshville, or that the Bishop made any arrangement or agreement giving him a right to participate in the control of the automobile, or that the Bishop at any time actually exercised any control. All the evidence shows is that the Bishop made the fatal trip in the automobile.

The Bishop's expense book reflects that he contemplated driving his own car to Walshville by reason of a notation therein of the mileage and allowable expense for the trip. Such evidence affords no support for any inference that the Bishop paid or agreed or intended to pay Reverend Bigelow anything for the privilege of riding with him to Walshville on a trip Reverend Bigelow would have made in any event, or that the Bishop made any arrangement giving him any right to control the operation of Reverend Bigelow's car.

It is undisputed that the Bishop was Reverend Bigelow's superior in the church. There is, however, no evidence showing that it was within the scope of Reverend Bigelow's church duties to provide the Bishop with transportation in his own car.

Under the circumstances of this case, no presumption would arise that Reverend Bigelow intended to transport the Bishop for hire or compensation.

The burden is upon the defendants to establish their joint enterprise defense. From a careful examination of the entire record, we can find no evidence whatsoever which would support a finding that Bishop Emery or any one else employed Reverend Bigelow to transport the Bishop to Walshville or that the car was hired for such purpose.

We hold that there is no substantial evidence to support a determination that Bishop Emery had any right of control over the operation of Reverend Bigelow's automobile and hence we conclude that no basis exists for the submission of the imputed negligence issue to the jury. The court erred in overruling plaintiff's exceptions to the instructions submitting the issue of imputed negligence to the jury.

We cannot say such instruction was not prejudicial. The jury verdict is a general one. The jury finding could be based upon a determination that no negligence on the part of the defendants was established or upon a finding that Bishop Emery was himself guilty of contributory negligence. It could also be based upon a finding of joint venture and imputation of negligence of the driver Reverend Bigelow to the Bishop. It is noteworthy that the jury requested and were given further instructions upon joint venture. Thus it is impossible to say that error in submitting the joint venture issue to the jury was not prejudicial. Because of such error, plaintiff is entitled to a new trial.

Our attention has been called to Jasper v. Freitag, supra, decided by the North Dakota Supreme Court on October 20, 1966, subsequent to the submission of this appeal. There is language in such case and in Weber v. Stokely-Van Camp, Inc., 274 Minn. 482, 144 N.W.2d 540, quoted and cited by the North Dakota court, which indicates at least a strong tendency to limit the application of the imputed negligence doctrine. Inasmuch as we have found no relationship existing between Bishop Emery and Reverend Bigelow which would give rise to a situation warranting the imputation of negligence on the part of Reverend Bigelow to Bishop Emery, we deem it unnecessary and undesirable to determine the present status of North Dakota law on imputed negligence in a joint enterprise situation.

### IV, V and VI.

Since what we have heretofore said is dispositive of this appeal, we deem it unnecessary to consider the remaining errors urged by the plaintiff.

By reason of the error in giving the imputed negligence instruction, the judgment is reversed and this case is remanded to the trial court for a new trial.